GROBBEL *v.* BOARD OF WATER COMMISSIONERS OF THE CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE—DETROIT CHARTER—CITIES.

Under Act No. 279, Pub. Acts 1909, as amended by Act No. 203, Pub. Acts 1911 and Act No. 5, Pub. Acts 1913, an amendment to the charter of the city of Detroit, adopted by the vote of the people, establishing a system of civil service as to all officers, commissions and departments of the city and prohibiting the discharge of employees for political reasons, took effect when certified copies of the enactment and the vote for and against it were filed with the secretary of State and county clerk; *i. e.,* on May 3, 1913. See section 24 of Act No. 5, Pub. Acts 1913.

2. SAME—CONSTITUTIONAL LAW—SPECIAL STATUTES.

Although the board of water commissioners, created by special act of the legislature, was not embraced within the provisions of the city charter and is a distinct entity, the provisions of the Constitution, sections 20 and 21, art. 8, grant plenary power to the electors of local mu-

nicipal bodies over their local affairs, and such civil service provisions were valid.

3. SAME—MASTER AND SERVANT—WRONGFUL DISCHARGE.
    Where the civil service amendment was adopted at the spring election, on April 7, 1913, and the certified copies required by section 24 of Act No. 5, Pub. Acts 1913, were filed with the proper officials on May 3d, the employees of the board of water commissioners of the city of Detroit were affected and brought within the law on the 3d day of May, although no commission as provided for by the amendment had yet been appointed, and an employee who was discharged by the commissioners on the 6th of May was entitled to invoke the benefit of the civil service law: mandamus will issue to require the board to rescind such resolution discharging the relator.

MCALVAY, C. J., and STONE and OSTRANDER, JJ., dissenting.

Certiorari to Wayne; Murphy, Van Zile, and Hally, JJ. Submitted January 13, 1914. (Calendar No. 25,809.) Decided July 24, 1914.

Mandamus by Daniel J. Grobbel against the board of water commissioners of the city of Detroit to compel respondent to revoke a resolution discharging relator from the employment of the commission. An order granting the writ is reviewed by respondent on certiorari. Affirmed.

*Allan H. Frazer,* for appellant.

*Percy W. Grose,* for appellee.

MOORE, J.   The relator, on May 6, 1913, and for some time prior thereto, was employed as cashier by the board of water commissioners of the city of Detroit.   On the 6th of May, 1913, he was, by the adoption of a resolution by respondent, discharged, without cause being assigned, and on the same day a different person was appointed.   The relator filed his petition in the circuit court for the county of Wayne, praying that a writ of mandamus issue, requiring the respondent to convene, rescind such resolution, and

reinstate the relator to the employment held by him prior to the adoption of such resolution. The respondent answered.

It was stipulated by the parties in open court, and thereafter ordered by the court, that the judgment in this cause should be the judgment of the court in the following causes, then pending in the circuit court for the county of Wayne:

No. 57162: Louis Montgomery v. Board of Water Commissioners of the City of Detroit.

No. 57163: Fred J. Wright, Jr., v. Board of Water Commissioners of the City of Detroit.

No. 57164: Thomas L. Walsh v. Board of Water Commissioners of the City of Detroit.

No. 57165: John F. Callahan v. Board of Water Commissioners of the City of Detroit.

No. 57166: Bruno Pieganowski v. Board of Water Commissioners of the City of Detroit.

No. 57167: John W. Sweeney v. Board of Water Commissioners of the City of Detroit.

No. 57168: Hugo A. Gilmartin v. Board of Water Commissioners of the City of Detroit.

No. 57169: Maurice Fitzgerald v. Board of Water Commissioners of the City of Detroit.

No. 57170: Sol Goldwater v. Board of Water Commissioners of the City of Detroit.

No. 57171: John A. Nowakowski v. Board of Water Commissioners of the City of Detroit.

No. 57172: Frank Kunkel v. Board of Water Commissioners of the City of Detroit.

No. 57173: Harry Murphy v. Board of Water Commissioners of the City of Detroit.

After a hearing before Judges Alfred J. Murphy, Philip T. Van Zile, and P. J. M. Hally, upon these questions, a writ of mandamus issued directing the respondent, the board of water commissioners of the city of Detroit, to reinstate the relator in this cause to the employment held by him on the 6th day of May, 1913. Respondent brings this cause to this court by writ of certiorari.

We are so well satisfied with the opinion filed by

the judges in the court below that we reproduce it
here:

"The relator, a discharged employee of the board
of water commissioners of the city of Detroit, seeks
a writ of mandamus to compel his reinstatement. The
facts involved are not in dispute. It will serve con-
sideration of the legal issues presented to summarize
them.

"With due observance of Act No. 279 of the Public
Acts of 1909, as amended by Act No. 203 of the Pub-
lic Acts of 1911, and as further amended by a public
act passed at the session of 1913, known as the Verdier
Act [Act No. 5, Pub. Acts 1913], and entitled 'An act
to provide for the incorporation of cities and for re-
vising and amending their charters,' there was sub-
mitted for adoption to the electors of Detroit, at the
election held April 7, 1913, a bill to establish a civil
service system for the employees of the city.

"The measure was adopted by an affirmative vote of
26,561, with 7,291 cast against it. As required by the
statute, the requisite copies of the enactment, with a
statement of the votes cast thereon, were filed with
the secretary of State and the county clerk of Wayne
county, respectively, on May 3, 1913.

"Upon May 6, 1913, Grobbel was dismissed by the
respondent by resolution upon the assumption that
the civil service enactment was not as yet in effect,
and if in effect that the water board is not amenable
to its provisions. The four commissioners created by
the adoption of the civil service measure were duly
appointed June 3, 1913, and had all qualified by June
6, 1913.

"The title of the measure approved by the voters is
'A bill to amend an act entitled "An act to provide a
charter for the city of Detroit, and to repeal all acts
and parts of acts in conflict therewith," approved
June 7, 1883, by adding a new chapter thereto, for
the purpose of providing for civil service regulations
for employees of the city of Detroit.'

"Among other things, it requires the civil service
commission created by it to classify the employees of
the city, and prohibits their discharge for political
reasons, or for reasons other than the good of the
service. Except certain designated officials, not here

germane, 'all officers, clerks and subordinates of all officers, departments, and commissions of said city, whether now existing or hereafter created, shall be selected and appointed as herein provided, but the officers, clerks and other employees in the service of said city, when this amendment shall take effect, unless removed for cause, shall be entitled to retain their positions.'

"Two contentions are made by the respondent. It is urged that the civil service measure became operative only with the appointment and qualifications of the commissioners. If this be so, the discharge of the relator, being antecedent thereto, is not open to question. It is next insisted that the respondent, as a distinct corporate entity, does not come within the purview of the civil service law, and hence is in no way bound by its provisions.

"The first position is wholly untenable. The enabling act of the legislature by explicit language determines the time when measures such as the one in question shall go into effect. In section 24 of that act it is provided that upon the adoption of an amendment to a city charter, and upon filing with the secretary of State and the county clerk of the county in which the city interested is located, certified copies of the amendment, with the vote for and against it, as was done in the present case, the amendment 'shall thereupon become law.'

"The power of the legislature to fix the time when the action of the electors shall become operative is unquestioned. The legislature having spoken in unmistakable terms, it is clear that the amendment received its vitality and, in fact, became law upon May 3, 1913, when the essential preliminaries had been complied with. To hold otherwise would be to disregard language which has no ambiguity in it, and which is imperative in its command.

"Furthermore, the claim that the efficacy of the measure lay wholly latent and suspended until the commission was appointed is negatived by the civil service act itself.

"The commission is required by the terms of section 1 to be appointed by the mayor 'in the month following the date when the amendment shall become operative.' Here is a clear recognition of the validity and

force of the law itself as pre-existent to the required appointments.   One month is set aside within which to establish the machinery necessary to execute the provisions already operative.   And finally, one of the expressed objects of the law, the right of all existing employees 'to retain their positions' in its inception bears no necessary relation to the future time when commissioners may be appointed.   The conclusion seems irresistible that the civil service law was in force from and after May 3, 1913.

"The second proposition urged by the respondent, to the effect that the board of water commissioners is not included within the provisions of the civil service legislation, grows out of these considerations. The board is a distinct corporate entity.   (See Laws of 1853, p. 180, § 1; also chapter 21, § 623, of the compilation of 1904 of the charter and acts of the legislature relating to or affecting the city of Detroit.) The act establishing this board is not embraced within the charter of the city.   The title of the civil service law states the purpose of the law to be the amendment of the charter by adding to it a new chapter.   Neither in the title nor in the body of the law is any specific reference made to the water board act. Therefore, it is argued, considering the distinctive legal character of the board, and keeping in mind both the purpose of the civil service measure as expressed in the title and as declared in the terms of the enactment, the board must be held to be not within its scope.

"The precise legal position of the board due to its status as a distinct corporate body has been determined in an analogous case.   *O'Leary* v. *Board of Fire & Water Com'rs,* 79 Mich. 281 (44 N. W. 608. 7 L. R. A. 170, 19 Am. St. Rep. 169).   Justice CAMPBELL, speaking for the court in that case, said of the defendant, which was a body of like corporate functions with this respondent:

" 'While it is a local corporation, created to serve municipal purposes, it is in no sense a municipal corporation, within the legal meaning of that term.   It has been settled in this State that there can be no municipal corporation that is not the direct representative of the people of its locality [citing cases].   In

several of these, as in other cases, the doctrine has been recognized that the establishment of corporations to act as municipal boards or agencies did not give them any governmental municipal authority. * * * The incorporation of water and fire boards appointed by the city is only a convenient way of removing that business from the constant interference of the ordinary city authorities, with such safeguards as are deemed best for that purpose.'

"That an agency such as the water board is thus defined to be is subject to the direct legislative power of the electors becomes clear from an examination of the history of the grants of that power to the people. Such an examination is also essential to test the soundness of the objection that the board is not reached by the terms of the civil service measure.

"A departure from the former method of granting charters to cities was made by the Constitution of 1909. By sections 20 and 21 of article 8 of that instrument, the legislature was required to provide a general law for the incorporation of cities, and the electors of each city, acting under such general law, were given plenary power, subject to the Constitution and the general laws of the State, over their local affairs. The debates of the constitutional convention demonstrate that the purpose of the framers was to vest in the people of municipalities full legislative control over their own problems of local self-government.

"In order to amplify the powers thus conferred, section 21 was amended by the people at the election in November, 1912, and now reads as follows:

" 'Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of the State.'

"One of the chief 'municipal concerns' is the procurement of a water supply. And one of the essentials of urban life is the proper administration of that supply when procured. Thus the right of the voters of the city to legislate upon the administrative

methods of the respondent, one of the mere agencies of the city for carrying on its municipal affairs, is obvious.

"Did the voters effect such legislation by the adoption of the civil service law? They have added a chapter to the charter establishing a system for the employment and discharge of 'all officers, clerks and subordinates of all offices, departments and commissions of said city.' They were within their clear right in so doing. They have employed language which is not only broad, but so comprehensive as to include necessarily such a department as the water board.

"No obligation rested upon the voters to enumerate the affected departments. It was competent for them to express their will in language so inclusive that by necessary implication it should embrace all departments. And that was the plan pursued. There being no legal obstacle to prevent that course, and the authority to sustain it being ample, under the broad constitutional grants made available to the people by the legislative enactments of 1909, 1911, and 1913, first referred to, there is no difficulty in giving effect to the purpose sought in the enactment of the civil service law. That purpose, among others, was to add to the charter a new chapter by which such department as the water board should place the employment and discharge of its subordinates upon a civil service basis. The power so to do being ample, the method employed being appropriate, and the end sought being both clear and free from invalidity, the will of the voters must be made effective.

"A writ of mandamus will issue commanding the respondent promptly to rescind its resolution by which the relator was discharged, and to reinstate him in the employment held by him at the time of its passage."

See the case of *Philbrick* v. *Dust,* 178 Mich. 605 (146 N. W. 175).

The action of the court below is affirmed. As the question involved is a public one, no costs are allowed.

BROOKE, KUHN, BIRD, and STEERE, JJ.. concurred with MOORE, J.

OSTRANDER, J. (*dissenting*). In my opinion, the electorate of the city of Detroit has not the power to amend (by implication or otherwise) an act of the legislature, other than the charter, which sets up and defines the duties and powers of a municipal board such as the respondent is.

McALVAY, C. J., and STONE, J., concurred with OS-TRANDER, J.