634 So.2d 341 (1994)
Joe J. ROBERTS
v.
SEWERAGE AND WATER BOARD OF NEW ORLEANS.
No. 92-C-2048.
Supreme Court of Louisiana.
March 21, 1994.
*342 Frank B. Hayne, III, New Orleans, for applicant.
Jacob Taranto, III, Metairie, John D. Lambert, Jr., New Orleans, for respondent.
Elmer G. Gibbons, III, Brett J. Prendergast, William D. Aaron, Jr., Bruce E. Naccari, New Orleans, for amicus curiae.
DENNIS, Justice.[*]
The issue in this case is whether the Sewerage and Water Board of New Orleans (SWB) is immune from liability in tort to a police officer (Roberts) employed by the City of New Orleans (City) who was injured when his patrol car hit an open sewer manhole while he was in the course and scope of his police-related duties. The trial court sustained the SWB's exception of no cause of action on the basis that the SWB is not a "third person" against which the employee is entitled to seek tort damages but instead is one of those persons that the Workers' Compensation Act treats as the employer in making the compensation remedy exclusive as between it and the employee. The Court of appeal affirmed, in an unpublished opinion, holding that, although the City and the SWB are separate entities and political subdivisions, La.R.S. 23:1034 provides that workers' compensation is the exclusive remedy in cases involving employees of any political subdivision, 599 So.2d 1104. We granted certiorari, 605 So.2d 1354 (La.1992), and now reverse.
The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition. The exception is triable on the face of the papers and for the purposes of determining the issues raised by *343 the exception, the well pleaded facts in the petition must be accepted as true. La.C.C.P. Art. 927; Owens v. Martin, 449 So.2d 448 (La.1984); Darville v. Texaco, Inc. 447 So.2d 473 (La.1984); Mayer v. Valentine Sugars, Inc. 444 So.2d 618 (La.1984); Haskins v. Clary, 346 So.2d 193 (La.1977). The general rule applicable to a trial of such exception is that an exception of no cause of action must be overruled unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based; that is, unless the plaintiff has no cause of action under any evidence admissible under the pleadings. Haskins, supra, at 195; West v. Ray, 210 La. 25, 26 So.2d 221 (1946).
Plaintiff's petition alleged in substance: Joe J. Roberts, a resident of the Parish of Orleans, on or about April 2, 1988, was driving North on Toledano Street toward South Claiborne Avenue in New Orleans. The street was flooded, and there was a submerged open manhole, which he could not see in his lane of travel. The right front of the vehicle entered the hole, causing it to stop instantly. Roberts' head struck the steering wheel and he was thrown about inside the car, causing severe injuries, pain and suffering and related damages. The missing manhole cover was the responsibility of the Sewerage and Water Board; alternatively, the cover was missing because of improper design, construction and maintenance of the manhole structure and related appurtenances by the Sewerage & Water Board. According to the record presented for our review, the parties do not dispute the fact that at the time of the accident Roberts was in the scope and course of his employment as a New Orleans City police officer driving a patrol car on the city streets.
The Sewerage and Water Board filed an exception of no cause of action alleging that, because Roberts was a City of New Orleans police officer in the course and scope of his employment at the time of the accident, his exclusive remedy is for benefits under the Workers' Compensation Act. After considering the pleadings and some evidence by consent of the parties, the trial court sustained the SWB's exception and dismissed the petition with prejudice. Roberts appealed. The court of appeal affirmed, concluding, in an opinion not designated for publication, that:
[T]he instant case concerns an employee of one entity, the City of New Orleans who has sued in tort another entity, the Sewerage and Water Board. That is prohibited by the workers' compensation law of the State of Louisiana.
The two entities are without doubt political subdivisions of the State of Louisiana albeit separate entities, and the provisions of LSA-R.S. 23:1034 provide that workers' compensation is the exclusive compulsory and obligatory remedy in cases involving employees of any political subdivision. The statute specifically spells out that policemen shall be covered by this chapter.
Workers' Compensation rests on the sound economic principle that those persons who enjoy the goods or services of a business or other systematic purposeful activity should ultimately bear the cost of the injuries or deaths of its employees that are incident to the production and distribution of its goods and services. See 13 Malone & Johnson, La.Civil Law Treatise, Workers' Compensation Law and Practice § 32 (1980) (hereinafter "Malone & Johnson"). Just as in the case of capital structures, machinery and equipment, the expected cost of injury or death to workers can and should be anticipated and provided for in advance through the medium of workers' compensation insurance, and the premiums for such insurance can be considered an item of production cost in fixing the prices or fees charged for the commodity or service. Id. To operate fairly to all parties, the compensation principle requires predictability and affordability, entailing a compromise between the employer and its employees in which each party surrenders certain advantages under the tort law in order to gain others which are of more importance to each and to society. Id. The employer gives up the immunity it otherwise would enjoy in cases where it is not at fault, and the employee surrenders his or her former right to full damages and accepts instead a more modest claim for bare essentials, payable, however, regardless of the employee's or employer's fault and with a minimum *344 of dispute or delay. Id. In other words, the compensation principle essentially ignores the element of blameworthiness and seeks to allocate the accident costs of an industry or undertaking to users of the product or services of the employer. 13 Malone & Johnson § 33.
Obviously, this compromise, in which the employer and employee each surrender valuable rights, could not be effectuated if either party were free to ignore the Act whenever it would be to his advantage to do so. 14 Malone & Johnson § 361. Consequently, Section 1032 of the Act provides that proceedings for compensation afford the employee his or her exclusive remedy against the employer as the result of a work-related injury. While this exclusive remedy provision does not affect liability for "an intentional act" of the employer, nor liability for a "fine or penalty under any other statute", La.R.S. 23:1032(B), as neither of these are applicable in the present case, we neither consider nor discuss them. Originally, Section 1032 accomplished its object very simply by stating that "[t]he rights and remedies herein granted to an employee ... on account of personal injury for which he is entitled to compensation ... shall be exclusive of all other rights and remedies of such employee...." Applying this principle, our courts consistently held whenever the Compensation Act is applicable, the employee could not pursue any tort remedy for damages against his employer. Later, however, a combination of forcesnot the least of which were the very low level of compensation benefits and the ingenuity of Louisiana counselproduced modifications and limitations that evoked a legislative amendment in 1976. 14 Malone & Johnson § 361. At the time of the accident in the present case, the statement of the basic element of the exclusive remedy provision read as follows:
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee ... against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.

La.R.S. 23:1032, as amended by 1976 La.Acts No. 147 (emphasis added). The primary purpose of the 1976 amendment to Section 1032 was to extend specifically to executive officers of corporate employers and other management insiders the immunity previously enjoyed by the corporate employer alone under the section. 14 Malone & Johnson § 361. This legislation closed the "executive officer suit" loophole which exposed officers in the upper echelons of management to the prospect of tort liability for large numbers of employee accidents, impelling them to exact liability insurance from the corporate employer and thereby denying it much of the practical advantage of the exclusive remedy provision and the compromise envisioned by the compensation principle. 14 Malone & Johnson § 365, quoting W. Malone, Louisiana Workmen's Compensation Law and Practice (1st Ed.), Supp., § 366.
Because it is clear that compensation is the exclusive remedy between the employee and the employer, it is important to know precisely who is an employee. Obviously, the same principles which decide the question of whether compensation is payable, also are used to decide the question of whether a tort remedy must be denied. 14 Malone & Johnson § 363. The existence of the employment relationship is crucial, and injuries occurring either before its beginning or after its termination will by definition have been incurred by someone other than an employee, thus making the Act inapplicable. 14 Malone & Johnson § 363. As a general rule, a person may become an employee within the meaning of the Act only if he is consensually performing a service for another with the latter's consent and subject to his control or direction. La.R.S. 23:1035; 13 Malone & Johnson § 52. Under Sections 1061-63 of the Act, a principal employer or contractor is by law made liable, under prescribed conditions and circumstances, to employees of his contractors or subcontractors for compensation, see 13 Malone & Johnson §§ 121-129; however, none of the parties contends that these provisions are applicable in the present case.
*345 The same principles which determine who are to be considered as employees so that their exclusive remedy will be compensation also determine who are to be treated as employers and therefore answerable in compensation and immune from tort liability. 14 Malone & Johnson § 364. Thus the same considerations with respect to the contract of employment and its confection hold equally true as to the employer, and make the compensation remedy exclusive as to the employer of a claimant under the ordinary contract of employment and under the principal-contractor or statutory employer situation. Id.
Although the compensation remedy is exclusive between the employer and the employee, it is not so with reference to a third party wrongdoer whose fault caused the injury or death of the employee. 14 Malone & Johnson § 367. In all compensation law, social policy has dispensed with fault concepts to the extent necessary to ensure an automatic recovery by the injured worker; but the disregard of fault goes no further than to accomplish that object, and, with payment of compensation to the worker assured, the quest of the law for the actual wrongdoer may proceed in the usual way. So, it is elementary in all compensation schemes, that if a third person's negligence or other tort was the cause of injury to the claimant in the course of employment, the third person should not in any degree be absolved of his normal obligation to pay damages for such an injury. 2A Larson, The Law of Workmen's Compensation § 71.10 (1992).
Moreover, Section 1101 of the Act expressly provides that when an injury for which compensation is payable has occurred under circumstances creating in a "third person" (defined as "some person ... other than those persons against whom the said employee's rights and remedies are limited in R.S. 23:1032 ...") a legal liability to pay damages in respect thereto, the employee's claim or collection of compensation shall not affect the employee's right of action or claim for damages against the third person. Therefore, Louisiana law, unlike that of some jurisdictions, provides that the employee is entitled to proceed both by claiming compensation against his employer, and at the same time prosecuting his claim for damages against the third party wrongdoer. 14 Malone & Johnson § 367. Thus, it is clear that under Section 1032, the compensation remedy is exclusive only as between the employee and his employer (or those other persons so treated in that section); it does not purport to impair existing claims against third persons. 14 Malone & Johnson § 369.
Furthermore, in interpreting the Workers' Compensation Act, the basic history and policy of the compensation movement must be taken into account. See 13 Malone & Johnson § 35. The dominant purpose of the movement to adopt compensation laws in the early decades of this century was not to abrogate existing tort remedies that afforded protection to workers. Rather, it was to provide social insurance to compensate victims of industrial accidents because it was widely believed that the limited rights of recovery available under the general tort law was inadequate to protect them. Boggs v. Blue Diamond Coal Co., 590 F.2d 655 (6th Cir.1979). The so-called "unholy trinity" of judicially-created employer defenses (assumption of the risk, contributory negligence and the fellow servant rule) were developed and strictly enforced as legal rules in the last half of the nineteenth century. The result was recovery in less than a quarter of work-related accidents, as injured workers subsidized economic growth. Boggs, 590 F.2d at 658-59, citing Prosser & Wade, Cases and Materials on Torts 619 (5th Ed.1971); Prosser, Handbook of the Law of Torts § 80 (1971). See also Larson, The Nature and Origins of Workmen's Compensation, 37 Cornell L.Q. 206 (1952); Horowitz, The Transformation of American Law 251-66 (1977); Pound, The Spirit of the Common Law 29-31 (1921). Workers' compensation laws were adopted as a compromise between contending forceslabor, which generally favored reform, and employers, who generally opposed it. Workers were willing to exchange a set of common-law remedies of dubious value for modest workers' compensation benefits designed to keep the injured workers and their families from destitution. Boggs, 590 F.2d at 659.
*346 Because workers' compensation benefits have lagged far behind the expansion of liability and the curtailment of tort defenses, courts have responded by liberally construing the coverage provisions of workers' compensation acts while narrowly construing the immunity provisions. This approach has been justified as follows:
[T]here is no strong reason of compensation policy for destroying common law rights ... [and] every presumption should be on the side of preserving those rights, once basic compensation protection has been assured.... The injured employee has a right to be made wholenot just partly whole.... [A]ll the reasons for making the wrong-doer bear the costs of his wrongdoings still apply, including the moral rightness of this result as well as the salutary effect it tends to have as an incentive to careful conduct and safe work practices.
Boggs, 590 F.2d at 660 (quoting 2A Larson, The Law of Workmen's Compensation § 72.50 at 14-95 (1976)). In light of this basic history and policy, we agree with the foregoing authorities that every presumption should be on the side of preserving the general tort or delictual rights of an injured worker against the actual wrongdoer, in the absence of explicit statutory language limiting or excluding such rights.
Applying the precepts stated above, we conclude that the SWB is a "third person" against whom the police officer, Roberts, may seek tort damages because Roberts was employed by the City, and not the SWB, at the time of his accident, and the SWB is not entitled to be treated as his employer under the Workers' Compensation Act.
First, the SWB was not Roberts' actual employer when he was injured. When Roberts' work related accident occurred he was acting in the scope and course of his employment as a City police officer; he had not consented to perform any service for the SWB with the latter's consent and subject to its control and direction. By the same token, Roberts was not engaged at the time of the injury in any job, duty or activity in furtherance of the SWB's business, enterprise or undertaking. Furthermore, because a public body is required by law to limit itself to the functions allotted to it, the SWB probably could not even justify such an employment which is outside the regular course of its public business. See 13 Malone & Johnson § 99.
Second, the SWB fits within the Workers' Compensation Act's definition of a "third person" provided for by Section 1101(A) as "some person ... other than those persons against whom the said employee's rights and remedies are limited in R.S. 23:1032...." The SWB clearly does not fall within any classification of persons that Section 1032 specifically excludes from the category of third persons; therefore, the SWB is a third person and is not entitled to immunity from proceedings in tort. In other words, the SWB was none of the following: Roberts' co-employee, supervisor, or executive officer; Roberts' principal or statutory employer; employee of a principal; a partner of Roberts' employer; or a director or stockholder of Roberts' employer, or of any principal.
Third, while the SWB and the City of New Orleans are closely related, the fact that a political subdivision is closely related to another does not necessarily prevent it from being considered a "third person" for purposes of the workers' compensation act. Local government units such as the SWB are generally treated as separate and distinct public juridical persons or corporations for certain purposes whether they are called that or not. See La.Civil Code art. 24 and Revision Comments1987; 1 McQuillin, Municipal Corporations §§ 2.07a, 2.23 (3rd ed. 1987); 1 Sands & Libonati, Local Government Law § 2.02 (1993), (citing, e.g. City of Mesa v. Salt River Project Agric. Improvement & Power Dist., 92 Ariz. 91, 373 P.2d 722 (1962); West Chicago Park Comm'rs v. City of Chicago, 152 Ill. 392, 38 N.E. 697 (1894); Callanan Road Improvement Co. v. McMullen, 253 A.D. 424, 2 N.Y.S.2d 666 (1938); Markey v. Queens County, 154 N.Y. 675, 49 N.E. 71 (1898). The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can *347 appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity. 1 Sands & Libonati, § 2.18 and authorities cited therein, §§ 2.19, 2.20.
Such a determination will depend on an analysis of specifically what the entity is legally empowered to do. 1 Sands & Libonati § 2.02. Using such a functional approach, courts have found cities and various other kinds of local government entities to be independent and autonomous, having juridical personality. For example see Creighton v. City of Santa Monica, 160 Cal.App.3d 1011, 207 Cal.Rptr. 78 (2d Dist.1984) (elected rent control board was separate and autonomous from the city); Kargman v. Boston Water and Sewer Com'n, 18 Mass.App.Ct. 51, 463 N.E.2d 350 (1984) (commission's corporate attributes or powers establish it as an "independent body politic and corporate" as it has the power to sue and be sued in its own name; acquire, hold, and dispose of real and personal property; make contracts; engage employees and agents and fix their compensation; exercise the power of eminent domain; and exercise such other powers as are necessary to carry out its purposes); Allis-Chalmers Corp. v. Emmet County Council of Gov'ts, 355 N.W.2d 586 (Iowa 1984) (constituent local governmental units not responsible for contract of inter-local governmental entity which had its own corporate existence since it has the power to sue and be sued, acquire and dispose of property, enter contracts, fix and charge fees for its services, establish a budgeting system, borrow money and issue bonds, etc ...); East Montgomery Water, Sewer & Fire Protection Auth. v. Waterworks of Montgomery, 474 So.2d 1088 (Ala.1985) (city board is separate and independent from the city which it serves (quoting from Water Works Board of Leeds v. Huffstutler, 299 So.2d 268 (Ala.1974))).
Applying a functional approach in the present case to the pertinent legal precepts and the face of the pleadings, we conclude that the SWB is an autonomous or self-governing legal entity with respect to the management of its business or function of providing water, sewerage and drainage service to consumers in Orleans and other parishes. As such, the SWB is legally independent of the City, state and other governments in its source of revenues; the employment, deployment, direction and control of its work force; and the comprehensive management of its public utility operations.[1]
The SWB is created and granted authority by law to construct, control, maintain and operate the public water, sewerage and drainage systems within the City. La.R.S. 33:4071. The SWB by law is composed of seven citizens appointed by the mayor of the City for nine year terms of office, two members of the Board of Liquidation, City Debt, to be appointed by the mayor on that board's recommendation, one of the district city councilman selected by the council, the two at large members of the council, and the mayor. Id. The SWB is authorized to elect an executive director, fix the director's salary and discharge the director at its pleasure. La.R.S. 33:4073. The SWB is similarly authorized with respect to the employment of a general superintendent. La.R.S. 33:4075. The SWB is authorized to employ all necessary clerks, engineers, firemen, and other employees necessary to operate the public sewerage, water and drainage systems; dispense with the services of unnecessary employees; establish a pension fund for its employees; and make rules and regulations governing employees' pensions. La.R.S. 33:4076. Although the city attorney is designated *348 by law as the legal advisor of the SWB, the city attorney is required to appoint, with the advice and consent of the SWB, a special counsel to conduct the SWB's legal business. La.R.S. 33:4077. On request of the SWB, the city attorney, or special counsel of the SWB, is required to cause property to be expropriated in the name of the city for sewerage, water and drainage systems. La. R.S. 33:4078. The SWB may independently acquire or expropriate property for such purposes in Plaquemines, St. Bernard, Jefferson and St. Charles Parishes. Id. The SWB has authority over construction of all underground work for sewerage, drainage and water systems; and to make rules and regulations to prevent obstructions or damage to such systems. La.R.S. 33:4081. The SWB may contract to supply water to consumers in adjoining parishes at rates fixed by it. La.R.S. 33:4082.1. The SWB may fix the rates to be charged private consumers of water, subject to approval by the Board of Liquidation, City Debt, and the City council; the rates shall be based on water consumed and shall not exceed the actual cost of maintenance, operation and improvement of the public water system; there shall be no obligation on the part of the City to provide funds for the operation and maintenance of the water system of the City. La.R.S. 33:4096. The SWB is granted similar rate making powers with respect to its maintenance, operation and improvement of the sewerage system of the City. La.R.S. 33:4121-22.
Consequently, given the SWB's virtual plenary legal authority to manage, direct and control all aspects and operations of its public utility system, the allegations of fact admit to other reasonable hypotheses, i.e., that the SWB prudently insures against the predictable injuries and deaths of its employees incurred in utility operations and passes the expense of its workers' compensation premiums on to the consumers of its services as part of the cost of its operations. Even in the unlikely event that the SWB is self-insured, it is reasonable to assume that the expected cost of injury or death to workers is anticipated by the SWB and provided for in advance through some other medium, and that these allocations are regarded as items of operational costs in fixing the rates for the utility services. In either event, the principles of compromise and compensation underlying the Workers' Compensation Act do not contemplate that an employer such as the SWB is to be held immune from liability for injuries or deaths that arise out of activities that are not incident to the employer's performance of its public utility services and therefore are not involved in the employer's management of its workers' compensation risks and costs.
At the time of the accident, Roberts was neither a SWB employee, nor engaged in activities incident to the public utility services that the SWB is legally authorized to performthe provision of sewerage, water and drainage services to consumers within the City. Accordingly, it would be inconsistent with the purpose and aim of the Workers' Compensation Act, and its underlying principles, to grant the SWB immunity from Roberts' tort claim or to relegate the injured police officer to a compensation claim against the SWB.
The SWB relies heavily on a court of appeal decision in a similar case, arguing that it should be followed by this court to conclude that Section 1032 of the Workers' Compensation Act operates to defeat Roberts' tort claim against it. The SWB's reliance on that case is misplaced, however, because that decision was unpublished and incorrect.
In choosing to decide a case without a published opinion, the court of appeal should follow carefully its own rules, set out in the Uniform Rules of Louisiana Courts of Appeal, Rule 2-16. The issue in the prior court of appeal case, the same issue in the case at bar, is obviously not well settled or lacking in public importance. Therefore, it should not have been decided without a full-fledged published opinion. Uniform Rules, supra, Rule 2-16.1, 2-16.2. Cf. State v. Duhon, 340 So.2d 151 (La.1976). If it had been so treated, rather than in an unpublished per curiam, the court may have reached a different and more correct decision. Even if it had reached the same result, an expanded treatment would have been more apt to expose its flaws in reasoning, thus causing this *349 court to grant certiorari and to bring about an earlier correction of the jurisprudence.
Once having been decided in unpublished form, however, the opinion should not have been referred to by counsel at all. Opinions marked "Not Designated for Publication" should not be cited, quoted, or referred to by any counsel, or in any argument, brief, or other materials presented to any court, except in continuing or related litigation. Uniform Rules, supra, 2-16.3. Further, in general, unpublished opinions should not be cited or used as precedent by courts in subsequent cases. See e.g., Ruggero J. Aldisert, Opinion Writing 16 (1990). The reason for such rules is that citation or reliance on unpublished opinions by counsel or by courts defeats the entire purpose for which unpublished opinions are allowedto ease the burden on judges by allowing them to decide cases involving well settled principles of law without having to spend the extensive time and effort that is required in deciding cases involving unsettled principles of law and writing full-fledged, thoroughly reasoned, published opinions. George Rose Smith, The Selective Publication of Opinions: One Courts' Experience, 32 Ark.L.Rev. 26 (1978). See also William L. Reynolds & William M. Richman, The Non-Precedential PrecedentLimited Publication and No-Citation Rules in the United States Courts of Appeals, 78 Colum.L.Rev. 1167, 1185-87 (1978).
However, because the court of appeal in the present case disregarded its own rules and based its decision primarily on its earlier unpublished opinion, we are forced to refer to that opinion also in order to properly explain why both appeals court decisions were incorrect. In the prior court of appeal case, an employee of the New Orleans Parkway and Park Commission filed a tort suit against the SWB after he was injured when a SWB employee ran over his foot. In a two page per curiam opinion the appeals court evidently concluded that both the SWB and the Parkway and Park Commission were departments of the City created pursuant to La.R.S. 33:531. Therefore, the court decided that SWB employees, like those of the Parkway and Park Commission, are employees of the City. These conclusions were incorrect. La.R.S. 33:501-571, which provides for the adoption and implementation of the commission plan of government by certain municipalities, specifically excepts the City of New Orleans from its provisions. La.R.S. 33:503. Thus the court of appeal was in error when it assumed that the SWB, or the Parkway Commission for that matter, was created pursuant to La.R.S. 33:531. As described above, the SWB is created and organized pursuant to La.R.S. 33:4071 et seq. as a board separate and independent of the governing authorities of the City and vested with autonomous or self-governing authority to construct, control, maintain and operate the public water, sewerage and drainage systems in the City. Therefore, SWB employees are not automatically or ex officio employees of the city.
In the present case, the court of appeal, rendering judgment in favor of the SWB, based its decision on the erroneous prior unpublished appeals court decision involving the SWB and Parkway and Park Commission employees. Additionally, the court of appeal interpreted La.R.S. 23:1034 to provide that "workers' compensation is the exclusive compulsory and obligatory remedy in cases involving employees of any political subdivision." By this the court of appeal evidently intended to hold that, whenever an employee of any political subdivision is injured by a tort attributable to another such subdivision, Section 1034 of the Act grants tort immunity to the wrongdoer subdivision and relegates the injured employee exclusively to a compensation remedy. This is an erroneous interpretation of the statute.
La.R.S. 23:1034, in pertinent part, provides that "[t]he provisions of this Chapter shall apply to every person in the service of the state or a political subdivision thereof ...; and for such employee and employer the payment of compensation according to and under the terms, conditions, and provisions set out in this Chapter shall be exclusive, compulsory, and obligatory; ...." The history, language and purpose of Section 1034 clearly indicate that the legislative aim was simply to require that the state and each political subdivision must afford the benefits *350 of the Workers' Compensation Act to its respective employee work force. See Jefferson B. Fordham & William T. Pegues, Local Government Responsibility in Tort in Louisiana, 3 La.L.Rev. 720, 752 (1941).
As stated earlier, an employer-employee relationship is crucial to a determination that the Workers' Compensation Act is applicable. This basic rule applies equally well to public employers and employees under La.R.S. 23:1034. 13 Malone & Johnson § 51, p. 70 n. 1. La.R.S. 23:1034 specifically states that "for such employee and employer" the payment of compensation under the terms of the Act shall be exclusive (emphasis added). Nothing in this section indicates that a political subdivision cannot be a "third person" with respect to the employee of another separate, self-governing political subdivision under the provisions of Sections 1101 and 1032 of the Act.
The historical development of Section 1032 also makes this clear. Prior to 1975, except for employments under the state or its political subdivisions, the Workers' Compensation Act became applicable only through the election of both the employer and employee. 13 Malone & Johnson § 97. In the beginning, the Act was made non-compulsory as to private employers primarily to satisfy possible constitutional objections. 13 Malone & Johnson §§ 37, 97. Because these objections did not exist in relation to public employers, the Act was made "exclusive, compulsory, and obligatory" to public employers, but only to differentiate the elective nature of the Act in relation to private employers. See 13 Malone & Johnson §§ 37(3), 99. In the years preceding 1975, there was widespread election of coverage under the Act by employees and employers, and a virtually complete dissipation of earlier constitutional doubts, which led the legislature to make the Act mandatory to private employers as well. 1975 La.Acts No. 583. The 1975 amendment simply brings private employers under the same general provisions as to coverage that public employers have operated under since the inception of the Act. 13 Malone & Johnson § 97. At no time throughout this evolution did the Act purport to alter, for public employers and employees, the basic requirement that there be an employer-employee relationship in order for the Act to apply and for the coinciding tort immunity to exist. Finally, any doubt as to the meaning of Section 1034 must be resolved on the side of the strong presumption in favor of upholding injured employees' tort remedies against actual wrongdoers, in the absence of expressly unambiguous statutory provisions to the contrary.
Secondarily, the SWB relies on several published court of appeal decisions that are clearly inapposite. In Wright v. Moore, 380 So.2d 172 (La.App. 1st Cir.1979), a nurse employed by the state department of health and human resources sued the state through the department of transportation and development after she was injured during the course of her employment allegedly through the transportation department's negligence or garde in connection with a defective semaphore signal. The plaintiff argued that the two state departments are separate and distinct bodies corporate and that as an employee of one she was free to sue the other in tort as a separate entity. The court of appeal rejected this argument and held that:
[T]he State of Louisiana is the real party at interest and is indistinguishable from its executive departments. Under these circumstances it is not a "third person" and cannot, therefore, possess the dual capacity of employer and third person tortfeasor. La.R.S. 23:1034; La.R.S. 23:1101.
Wright, 380 So.2d at 173. The court of appeal did not engage in a legal and functional analysis of the departments involved, but its conclusion was undoubtedly correct. Although the legislature had granted each state department involved the status of a body corporate with the power to sue and be sued, it had not placed either under an independent board with powers of self government. See La.R.S. 36:251 and 501. The secretary of each department is appointed by and serves at the pleasure of the governor, and performs his or her functions under the control and supervision of the governor. La. R.S. 36:253 and 503. Thus each department does not have the legal capacity to function independently of the governor, but merely functions as an agency or division of the *351 State of Louisiana. Other cases relied on by the SWB, Green v. Turner, 437 So.2d 956 (La.App. 2d Cir.1983) and McGuire v. Honeycutt, 387 So.2d 674 (La.App. 3rd Cir. 1980), merely adopt the reasoning of Wright v. Moore, supra, and apply it to similar situations.
Finally, the SWB cites Sewerage and Water Bd. v. Civil Serv. Comm'n, 496 So.2d 1019 (La.1986) in support of its position without explaining how the decision applies to the present workers' compensation problem. In that case this court held that the City Civil Service Commission has regulatory jurisdiction over employment practices of both the City and the SWB. In doing so, however, this court made it clear that "[i]t is not essential to the decision in this case that we determine precisely whether the Sewerage and Water Board is an agency or subdivision of the state nor whether, and the extent to which, it is `separate and distinct' from the City of New Orleans." Id. at 1026. Accordingly, this court's interpretation in that case of the constitutional provision pertaining to the rule-making and subpoena powers of the civil service commission for the purpose of regulating employment practices by the City and the SWB has no application to our statutory interpretation of the workers' compensation provisions governing whether the SWB is a "third person" for purposes of a tort suit by a police officer injured while in the course of his employment by the City. Furthermore, the Civil Service Commission should not be confused with the personnel office of either the City or the SWB. Civil Service Commissions are independent, autonomous constitutional bodies created for the purpose of eliminating, as much as humanly possible, political influence in public employment practices. Civil Serv. Comm'n of New Orleans v. Guste, 428 So.2d 457 (La.1983). Civil service and workers' compensation programs address entirely different public and individual concerns; therefore, the applicability of civil service rules, aimed at protecting workers from political abuses, has no bearing upon a worker's rights to reparation for bodily injury under tort and workers' compensation laws.
The City of New Orleans, as amicus curiae, urges us to follow the case of Ford v. New Orleans Sewerage and Water Bd., 594 So.2d 1088 (La.App. 4th Cir.1992), in which the court of appeal, in a full, published opinion, dealt with an almost identical issue as in the case before us. Therefore, we have carefully considered that decision, but conclude that, because it was based on the same arguments and authorities, it is no more persuasive than the arguments of counsel here. Accordingly, Ford v. New Orleans Sewerage and Water Bd., supra, and other authorities rejected herein are expressly overruled.
In many respects, the SWB's arguments throughout resemble those of private business corporations which attempt to have courts pierce their own corporate veils or disregard their own separate identity in order to borrow the tort immunity of a closely related parent, subsidiary or sibling corporation. In such cases, it is generally held that one who sets up and accepts the benefits of one's own separateness, must also accept the burdens that flow from it and cannot be heard to disavow that separateness. Smith v. Cotton's Fleet Service, Inc., 500 So.2d 759, 762 (La.1987); Lyon v. Barrett, 89 N.J. 294, 445 A.2d 1153 (1982); 2A Larson, supra, § 72.40. See also Workers' Compensation Immunity as Extending to One Owning Controlling Interest in Employer Corporation, 30 A.L.R. 4th 948 (1984). The more separateness there is in terms of operations, tax liabilities, loans, accounting, insurance, hiring, and payroll, the less likely the affiliated corporation, be it parent, subsidiary, or sibling, will be granted tort immunity. 2A Larson, supra, § 72.40.
In terms of a parent-subsidiary relationship the most important factor is actual control. If there is an absence of control by the parent over the subsidiary there will be no tort immunity granted to the parent against an employee of a subsidiary, even if there is common ownership, identity of management, and the presence of a common insurer. 2A Larson, supra, § 72.40. When one corporation is attempting to assert tort immunity against an employee of a sibling corporation, the defense is rarely successful, for even when there is a considerable degree of identity within the corporate family, the sibling corporation is not necessarily the employer *352 of the other sibling corporation's employee. Id. Louisiana courts have previously addressed these issues and have refused to disregard the corporate structure to allow one to avoid tort liability. Cotton's Fleet, supra; Burton v. Berthelot, 567 So.2d 649 (La.App. 4th Cir.1990); Cormier v. Guilbeaux, 547 So.2d 17 (La.App. 3d Cir.1989). Other jurisdictions have likewise so held. Gulfstream Land & Dev. Corp. v. Wilkerson, 420 So.2d 587 (Fla.1982); Samaras v. Gatx Leasing Corp., 75 A.D.2d 890, 428 N.Y.S.2d 48 (1980); C & L Trucking, Inc. v. Allen, 285 Ark. 243, 686 S.W.2d 399 (1985); Gaber v. Franchise Servs., Inc., 680 P.2d 1345 (Colo. App.1984).
We find the reasoning and policies behind such cases to be quite analogous to the present case and very persuasive. As with affiliated private corporations, we refuse to disregard the autonomy and independence of the SWB from the City of New Orleans in regards to its management and operations; its source of revenues; and its employment, deployment, direction and control of its work force. Therefore, the SWB is not entitled to appropriate or stretch the City's tort immunity as Roberts' employer to cover itself as his tortfeasor.
We hold that Roberts, a City of New Orleans employee, who has received workers' compensation benefits from his employer, may maintain his delictual action based on the same injuries against the SWB. Therefore, the SWB's exception of no cause of action should have been overruled. We thus reverse the trial court and court of appeal judgments and remand the case to the trial court for further proceedings consistent with this opinion.
Reversed and Remanded.
MARCUS and ORTIQUE, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
I disagree with the majority's conclusion that the SWB is not entitled to the city's tort immunity from suit by Roberts, a city employee.
The city charter refers to the SWB as one of the "unattached boards and commissions" of the city's executive branch. Other examples of unattached boards and commission are the Public Library Board and the Vieux Carre Commission, which are clearly not separate entities from the city. The SWB is required to submit to the city council a detailed report of its acts, doings, receipts, disbursements and expenditures. It must expropriate property in the city's name, and title to all public works constructed and property acquired by the SWB are vested in the city. The ad valorem taxes which fund the SWB are levied and collected by the city. Based on all these factors, I believe the SWB is sufficiently connected with the city so as not to be a third party tortfeasor for worker's compensation purposes.
ORTIQUE, Justice, dissenting.
The majority decides, based upon a historical review of the development of Workers' Compensation Law in this and other states, and jurisprudence of other jurisdictions that the Sewerage and Water Board of the City of New Orleans is sufficiently independent of the city that it is a third person within the meaning of the Workers' Compensation statutes, and therefore may be sued in tort by a city employee injured while in the course and scope of his employment as an officer of the New Orleans Police Department. I respectfully dissent.
The members of the Sewerage and Water Board of the City of New Orleans (SWB) are all appointees of the Mayor with the exception of the two at-large members of the City Council and one district council member. The citizen appointees to the Board must be confirmed by the City Council. La.R.S. 33:4071. All but three (3) employees of the SWB are covered by City of New Orleans Civil Service Commission Rules. La.R.S. 33:4075. Employees of the city and employees of the SWB may transfer between the Employees Retirement System of the SWB and the Employees Retirement System of the City of New Orleans without penalty or loss of pension credits. La.R.S. 33:4076.1.
The City Attorney, an official directly appointed by the Mayor and head of the City's Law Department, is the legal advisor to the *353 SWB, and he or she may appoint a special counsel to the Board. La.R.S. 33:4077. The SWB receives city funds by appropriation under La.R.S. 33:4083. Every contract for construction entered into by the SWB exceeding $50,000.00 in contract price, must be approved by the City Council before it is operative and binding upon the SWB. Every such contract must be executed before the City Notary. La.R.S. 33:4085.
The SWB is required to make full reports to the City Council which must be published in the Official Journal of the City. La.R.S. 33:4091. The city is authorized to issue bonds for the benefit of the SWB and to pay the principal and interest on such bonds. La.R.S. 33:4093. Any rate increase sought by the SWB must be approved by the Board of Liquidation, City Debt and a majority of the City Council. La.R.S. 33:4096. If a property owner fails to pay assessments and penalties owed the SWB, the Director of Finance for the City of New Orleans shall sell the property owner's property for the benefit of the SWB. La.R.S. 33:4112.
A review of the Home Rule Charter of the City of New Orleans, reveals that the City has several unattached boards and commissions which fall within the Executive Branch of city government. The SWB is included among the unattached boards.
Having set out those characteristics of the SWB which, in my view, reflect its symbiotic relationship with the government of the city of New Orleans, and being cognizant of those characteristics the majority believes are reflective of the Board's independence from the city, it is appropriate to engage in an analysis of these characteristics and their significance in determining the status of the SWB with respect to the city as it relates to public employees.
It is a tendency of modern municipal corporations to multiply internal departments, particularly in large cities. If a department or board is created by the legislature, it is generally, but not always viewed as a separate entity. Even if such boards are deemed to be separate corporations, such boards are not separate municipal corporations. 1 MCQUILLIN MUN. CORP. § 2.30 (3rd ed. 1987). These boards, sometimes referred to as special districts or limited purpose units of local government, are organized to perform one or more governmental services or functions. It has been suggested that the resort to the special district form of government is a reflection of the historical growth and the present decline of urban areas. One reason such boards are organized is to circumvent the financial restrictions imposed upon the debt and taxing power of general purpose local governments. See Art. VI § 34 of the Louisiana Constitution of 1974, which gives the legislature the authority to impose limits on the bonded indebtedness of local governments. When a debt limit is reached, a general purpose local government cannot expand or provide new services. By creating special districts, endowed with the power to incur debt, and in some cases levy taxes, restrictive tax and debt limitations may be avoided. See La.R.S.33:4097 and 4116, declaring that debt created by the SWB is not included in the city's debt limitation. Special districts may also be formed to respond to the insufficiency or inadequacy of the general purpose local government to provide a needed service. Phillips, Developments in Water Quality and Land Use Planning: Problems in the Application of Federal Water Pollution Control Act Amendments of 1972, 10 URBAN LAW ANNUAL 43, 101-04 (1975).
Special districts are not created merely as a means of creating a totally autonomous government unrelated to the performance of services necessary to the operation of a municipality in carrying out its governmental functions. See State v. Servat, 143 La. 175, 78 So. 437 (1918). Addressing the issue of incorporating municipal service boards, one court opined that "[t]he incorporation of water and fire boards appointed by the city is only a convenient way of removing that business from the constant interference of the ordinary city authorities, with such safeguards as are deemed best for the purpose." Grobbel v. Board of Water Com'rs, 149 N.W. 675 (1914) (involving challenge to adoption of a civil service system for city employees); State v. Servat, 143 La. 175, 78 So. 437 (1918) (holding that SWB is a mere agency for the *354 more convenient administration of the sewerage and water business of the city).[1]
Whether a board or similar body provided for by statute is or is not an agent of the municipality is a question which has been answered through the application of various tests. In Mayor & Aldermen of City of Savannah v. Harvey, 87 Ga.App. 122, 73 S.E.2d 260 (1952), the court concluded that despite establishment of the Park and Tree Commission by statute as an independent agency, the Commission was but a vehicle by which the municipality operates. The court noted the method of appointment, which was identical to the method set out in La.R.S. 33:4071. The court further noted that certain alterations and improvements must be approved by the Council, that the commission must submit an annual estimate of its budget to the City Council and that commissioners could be removed by the Mayor and Council. The court opined that there is no other way for a municipality to operate than through its officers and agents and "it makes no difference whether such agents are persons, boards or commissions." 73 S.E.2d 260, 262-63. These same characteristics apply to the SWB.
The wording of the statute, charter or ordinance under which a board is established often fixes the extent of the municipality's control over the board. Additionally, the nature of the duties performed by the board, i.e., whether governmental or corporate bears on the outcome of any determination as to the board's status with respect to the municipality. 18 McQUILLIN MUN. CORP. § 53.71 (3rd ed. 1993 rev. vol.). Sewerage and water service are among the services municipalities typically provide. 1 McQUILLIN MUN. CORP.§ 2.30 (3rd ed. 1987); Grobbel v. Board of Water Com'rs, 181 Mich. 364, 149 N.W. 675 (1914) (holding that procurement of water supply is one of the chief municipal concerns).
In the context of municipal liability for the torts of such boards, courts have based municipal liability upon the role of the particular board. Where a board is part of the machinery to carry on municipal government, and if it was, at the time of the damage, engaged in the discharge of a duty which rests primarily on a municipality, the city has been held responsible for the board's actions. Pettengill v. Yonkers, 116 N.Y. 558, 22 N.E. 1095 (1889).
Even where a board of water commissioners was found not to be an agent of a municipality because the municipality had no control over the board, the court held the municipality liable for the board's negligence where the board was engaged in the performance of a municipal duty rather than a corporate one. Lockwood v. City of Dover, 73 N.H. 209, 61 A. 32 (1905). A municipality was held liable for defective sewers under the control of board of public works in Googin v. Lewiston, 103 Me. 119, 68 A. 694 (1907), on the basis that sewer maintenance is a municipal duty. A Missouri court found a municipal board liable as a public entity for purposes of a statute imposing liability on a public entity for injuries resulting from negligent operation of a motor vehicle by a board employee in Best v. Schoemehl, 652 S.W.2d 740 (Mo. App.1983). However, this finding was based upon a state statute specifically imposing liability for the negligent operation of motor vehicles by employees of public entities.
Other courts have found the relationship between quasi-independent boards and the municipality sufficient to support the municipality's liability for a board's torts. Hourigan v. Norwich, 77 Conn. 358, 59 A. 487 (1904); Fine v. Mayor & Council of Wilmington, 47 Del. 539, 94 A.2d 393 (1953); St. Germain v. Fall River, 177 Mass. 550, 59 N.E. 447 (1901); Reed v. Syracuse, 83 Neb. 713, 120 N.W. 180 (1909); Seeley v. Amsterdam, 54 A.D. 9, 66 N.Y.S. 221 (1900). And despite courts having specifically found separate, independent entities with statutorily imposed duties, some courts have imposed liability upon municipalities for the independent agency's torts, based upon the agency's performance of a municipal function. Esberg-Gunst Cigar Co. v. Portland, 34 Or. 282, 55 P. 961 (1899) (liability found even where water *355 committee was found independent of municipal control); Ashby v. Erie, 85 Pa. 286 (Pa.1877) (liability found even where water works board was separate and independent of city with statutory duties and held not to be an agent of the city). Clearly, a board's unattached organizational structure does not transform the municipal character of said board to a totally autonomous non-municipal entity.
These cases are instructive as indicators of the ties between boards and municipalities. Despite the close relationship, legislatures have given such boards the power to sue and be sued without changing the true character of the relationship of one as to the other. In Rash v. Louisville & Jefferson County Metropolitan Sewer District, 309 Ky. 442, 217 S.W.2d 232 (App.1949), despite a finding that the Louisville Water Company was a separate corporation and a entity separate from the city, the court found that as a practical matter the Water Company was not only a public service company, but an operating facility of the city of Louisville.
Obviously, based upon both the analysis of a board's function and an analysis of the level of municipal control imposed statutorily, the SWB of the City of New Orleans is not a third person within the meaning of the Workers' Compensation Laws. The relationship between the City and the SWB is such that allowing the plaintiff in this case, a city employee, to sue the SWB in tort gives the plaintiff an opportunity to effectively recover what are essentially municipal funds twice for the same injuries. In addition, the majority creates a scenario whereby it will become necessary to litigate the issue of whether the city can sue the SWB to recover funds that the city has paid in workers' compensation. This result is contrary to the purpose and the spirit of the Workers' Compensation scheme as well as injurious to efforts to increase local governmental efficiency.
It is not within the constitutional powers of this court to detract from or diminish the effectiveness of the Home Rule Charter of the City of New Orleans by creating an opportunity for a major unattached agency of the city to exercise total independence from the city. To follow the rationale of the majority opinion to its logical conclusion would be to permit the judiciary to create an independence for the SWB heretofore unknown to that Board and unrecognized by the city. This, in my view, constitutes an action of legislative indulgence with which our courts have never been equipped or empowered to exercise. In my view, the nature of the relationship between the city and the SWB, precludes an action in tort, by this plaintiff, under the facts of this case.
I am of the further opinion that, even if plaintiff could sue the SWB in tort, plaintiff's petition states no cause of action because it fails to allege that the SWB had actual or constructive notice that the manhole cover was not in place and that the SWB had the opportunity, but failed to repair the condition complained of.
In 1985, the legislature enacted La.R.S. 9:2800 which provides that no person shall have a cause of action in strict liability against a public entity for damages caused by the condition of things in its care unless the public entity had actual or constructive knowledge of the particular vice or defect which caused the damage prior to the occurrence and that the public entity had an opportunity to remedy the defect and failed to do so.[2]
Plaintiff has not pled facts sufficient to state a cause of action against the SWB, therefore, the trial court in fact, reached a correct result albeit for different reasons.
I am not suggesting that the SWB cannot be sued by persons who are not city employees for damages caused by the SWB's own *356 negligence; however, it is clear that the relationship between the city of New Orleans and the SWB is such that the SWB is not a third person, within the meaning of the Workers' Compensation Statute, entitling a city employee who is allegedly injured as a result of the negligence of the SWB to sue the SWB in tort. Therefore, I respectfully dissent.
NOTES
[*] Watson, J., not on the panel. Rule IV, Part 2, § 3.
[1] The dissenting opinions point out that the Home Rule Charter of the City of New Orleans refers to the SWB as an "unattached board." Article 5. However the dissenting opinions fail to note that the charter also provides that "[t]he powers, duties and functions of the Sewerage and Water Board are provided by law." Section 5-302. Those powers, duties and functions are set out and defined by La.R.S. 33:4071 et seq., which clearly establish the independence of the SWB with respect to the management of its business or function of providing sewerage, water and drainage services to consumers in Orleans and other parishes.
[1] The majority appears to attack the holding in Servat, without recognizing its significance in the case at bar.
[2] Plaintiff alleges that on the day of the accident, the city experienced street flooding. As plaintiff proceeded down Toledano Street in a Northerly direction toward S. Claiborne Ave., the front tire of the car which he was driving ran into a manhole because the cover was missing. Plaintiff could not see that the cover was missing as the street was submerged. If plaintiff had no notice that the cover was missing, it is unlikely that the SWB had notice since no one could see the open manhole; likewise, it is unlikely that the SWB had an opportunity to repair, yet failed to do so. Plaintiff suffered these injuries in 1988, therefore, La.R.S. 9:2800 is applicable to this case.