THE COUNCIL OF THE CITY * NO. 2022-CA-0790
OF NEW ORLEANS

 * COURT OF APPEAL

VERSUS

 * FOURTH CIRCUIT

EDWARD WISNER
DONATION, THE * STATE OF LOUISIANA
HONORABLE MAYOR
LATOYA CANTRELL, IN HER * * * * * * *
OFFICIAL CAPACITY AND AS
TRUSTEE, MICHAEL
PENEGUY, SENATOR EDWIN
MURRAY, MAJOR CHRIS
THORNHILL AND PATRICK
NORTON

CONSOLIDATED WITH:     CONSOLIDATED WITH:

THE COUNCIL OF THE CITY OF NEW  NO. 2022-CA-0791
ORLEANS

VERSUS

EDWARD WISNER DONATION, THE
HONORABLE MAYOR LATOYA
CANTRELL, IN HER OFFICIAL
CAPACITY AND AS TRUSTEE, MICHAEL
PENEGUY, SENATOR EDWIN MURRAY,
MAJOR CHRIS THORNHILL AND
PATRICK NORTON

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-06765, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *
(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge
Sandra Cabrina Jenkins)

**LOBRANO, J., CONCURS IN THE RESULT**

Judy Y. Barrasso
Shaun P. McFall
Robert A. Waldrup
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, LLC
909 Poydras Street, Suite 2350
New Orleans, LA 70112

Justin B. Schmidt
LAW OFFICE OF JUSTIN B. SCHMIDT, LLC
1506 7th Street
New Orleans, LA 70115

COUNSEL FOR PLAINTIFF/APPELLEE


Robert L. Redfearn, Jr.
M. Claire Durio
SIMON, PERAGINE, SMITH & REDFEARN, L.L.P.
1100 Poydras Street
3000 Energy Centre
New Orleans, LA 70163-3000

COUNSEL FOR DEFENDANTS/APPELLANTS

Terrence Kent Knister
Daniel Lund
John Y. Pearce
R. Ethan Zubic
Katherine E. Clark
GORDON, ARATA, MONTGOMERY, BARNETT, MCCOLLAM,
DUPLANTIS, & EAGAN, LLC
201 St. Charles Avenue
40th Floor
New Orleans, LA 70170-4000

COUNSEL FOR DEFENDANTS/APPELLANTS –
PLAINTIFF/APPELLEE

**REVERSED; CASE DISMISSED WITH PREJUDICE; MOTION TO
DISMISS APPEAL OR ALTERNATIVELY STAY THE APPEAL DENIED
JUNE 9, 2023**

SCJ
RML

Defendants-appellants, the Edward Wisner Trust Management Board, on behalf of the Edward Wisner Donation, Mayor Latoya Cantrell, as trustee of the Wisner Trust and representative member of the board, and Senator Edwin Murray, Major Chris Thornhill, Patrick Norton and Michael Peneguy in their respective representative capacities as members of the board (collectively, "the Board") appeals the trial court's October 13, 2022 judgment, denying their exception of lack of procedural capacity and the granting of the City Council of New Orleans' ("City Council") motion for preliminary injunction. The Wisner Family Interests, LLC, Mark E. Peneguy, Cook Family Properties, LLC, Wendell H. Cook, Jr., EWP Family Properties, LLC, and Edward W. Peneguy, Jr. (collectively, "Wisner Family Interests"), also appealed the judgment. For the reasons assigned, the trial court's judgment is reversed; and we dismiss the City Council's petition with prejudice.

## FACTS AND PROCEDURAL BACKGROUND

On August 4, 1914, philanthropist, Edward Wisner, donated in trust approximately 50,000 acres of land located in Jefferson Parish, St. John the Baptist Parish and Lafourche Parish to the City of New Orleans. The trust instrument was limited to a 100-year term, naming the Mayor of the City of New Orleans, or his successors in office as trustee, and Charity Hospital[1], Tulane University, and the Salvation Army as beneficiaries.

---

[1] The Board of Supervisors of the Louisiana State University and Agriculture and Mechanical College ("LSU") is the successor to Charity Hospital.

1

In 1928, after Mr. Wisner's death, his widow, Mary Wisner, and their two daughters, Elizabeth Wisner and Harriet Wisner Peneguy (the "Wisner Ladies"), filed suit to annul the trust instrument. In 1929, the acting mayor of the City of New Orleans, Charity Hospital, Tulane University, and the Salvation Army entered into an Act of Compromise and Settlement, which added the Wisner Ladies as beneficiaries. Through the Act of Compromise and Settlement, the Edward Wisner Donation Advisory Committee ("Advisory Committee") was created to represent the beneficiaries and to control all matters relating to the trust.

The trust expired in August of 2014. *In re Edward Wisner Donation*, 2014-0027 (La. App. 4 Cir. 9/18/14), 150 So.3d 391, *writ denied*, 2014-2135 (La. 2/13/15), 159 So.3d 463. Thereafter, on March 3, 2020, Mayor Cantrell and the beneficiaries entered into a Ratification, Extension, Modification and Amendment agreement ("2020 Ratification Agreement").

On July 29, 2022, the City Council filed a petition for declaratory and injunctive relief. The petition alleged that the 2020 Ratification Agreement was an illegal disposition of public property, an impermissible modification of the trust, and an absolute nullity. The City Council sought to enjoin further distribution of trust proceeds to previous beneficiaries and enjoin the City of New Orleans from entering into new contracts without City Council approval to distribute trust proceeds during the pendency of litigation. The Board, in turn, filed a dilatory exception of lack of procedural capacity or, alternatively, peremptory exception of no right of action.

On September 22, 2022, the City Council filed a motion for a temporary restraining order and for a preliminary injunction. Thereafter, on September 26,

2

2022, the Wisner Family Interest filed a petition for intervention.[2] On September 28, 2022, the trial court held a hearing on the City Council's motion for temporary restraining order and preliminary injunction and the Board's dilatory and peremptory exceptions.[3]

On September 28, 2022, the trial court orally denied the Board's exceptions and granted the City Council's request for a preliminary injunction. The judgment was signed on October 13, 2022. On October 20, 2022, the Board filed a motion for devolutive appeal. The Wisner Family Interests subsequently filed its motion for devolutive appeal on October 25, 2022. On November 7, 2022, the Board and the Wisner Family Interests filed separate expedited applications for supervisory writs with this Court. On November 10, 2022, this Court denied the writ applications. This appeal follows.

## DISCUSSION

The Board and the Wisner Family Interests argue that the trial court erred in denying the dilatory exception of lack of procedural capacity and issuing a preliminary injunction in favor of the City Council.[4] We begin our discussion by addressing the exception of lack of procedural capacity.

**Exception of Lack of Procedural Capacity**

---

[2] The Wisner Family Interest are the heirs and successors-in-interest to the Wisner Ladies.

[3] The trial court did not hold a hearing on the Wisner Family Interests' petition for intervention.

[4] The Board raises six assignments error: 1) the court erred in denying the exception of lack of procedural capacity; 2) the court erred in granting a preliminary injunction; 3) the court erred in granting a mandatory injunction; 4) the court erred in granting a preliminary injunction beyond that prayed for by the City Council; 5) the court erred in failing to require the City Council to post a bond; and 6) the court erred in entering a judgment against Michael Peneguy. The Wisner Family Interests raise the following assignments of error: 1) the court erred in implicitly finding that the City is the sole owner of the trust corpus; 2) the court erred by improperly issuing a preliminary injunction; and 3) the court erred in denying the exception of lack of procedural capacity.

3

The Board and the Wisner Family Interests argue that the City Council does not have the juridical capacity to file a suit in its name. We agree.

The *de novo* standard of review applies to our review of the trial court's ruling on a dilatory exception of procedural capacity. *Rain CII Carbon, L.L.C. v. Recon Eng'g, Inc.,* 2018-0916, p. 4 (La. App. 4 Cir. 5/1/19), 270 So.3d 785, 788. "The determination of whether a party has the procedural capacity to sue or be sued involves a question of law." *Downtown Dev. Dist. of City of New Orleans v. City of New Orleans*, 2018-0726, p. 7 (La. App. 4 Cir. 5/8/19), 272 So.3d 917, 925, *writ denied*, 2019-00947 (La. 9/24/19), 279 So.3d 388 (quoting *Woodard v. Upp*, 2013-0999, p. 5 (La. App. 1 Cir. 2/18/14), 142 So.3d 14, 18). "The exception 'tests a party's legal capacity to bring suit.'" *Rain CII Carbon, L.L.C.,* 2018-0916, p. 4, 270 So.3d at 788 ( quoting *Mt. Zion Baptist Ass'n v. Mt. Zion Baptist Church # 1 of Revilletown Park*, 2016-0151, p. 5 (La. App. 1 Cir. 10/31/16), 207 So.3d 414, 417).

"An entity must be characterized as a juridical person in order to be sued. *Neighbors of 200 Henry Clay Ave. v. Bd. of Zoning Adjustment*, 2021-0387, p. 6 (La. App. 4 Cir. 1/26/22), 335 So.3d 255, 259-60 (citing *Dejoie v. Medley*, 41,333, p. 4 (La. App. 2 Cir. 12/20/06), 945 So. 2d 968, 972). "A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership." La. C.C. art. 24.

"Louisiana courts have consistently held that city councils, parish sheriff's offices, and city permit offices are not separate government units with the capacity to sue or be sued." *Port Marigny, LLC v. City of Mandeville*, CV 17-4727, 2018 WL 1757385, at *6 (E.D. La. Apr. 12, 2018) (citing *Urban Hous. of Am., Inc. v. City of Shreveport*, 2009-0317, 2013 WL 587894, at *4 (W.D. La. Feb. 13, 2013)). In determining whether city councils have the legal capacity to file a suit,

4

Louisiana courts have looked at the applicable organic law. *See City Council of City of Lafayette v. Bowen*, 94-584, p. 6 (La. App. 3 Cir. 11/2/94), 649 So.2d 611, 614.

In *Bowen*, the Third Circuit reviewed whether the Lafayette City Council had procedural capacity to institute a suit against the Lafayette mayor. 94-584, p. 1, 649 So.2d at 612. In determining the juridical status of the city council, the court relied on the Supreme Court's decision in *Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So.2d 341, 346-47 (La. 1994), that explained:

> [T]he juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity. 1 Sands & Libonati, § 2.18 and authorities cited therein, §§ 2.19, 2.20.
>
> Such a determination will depend on an analysis of specifically what the entity is legally empowered to do. 1 Sands & Libonati § 2.02 . . . .

Upon reviewing the applicable charter, the *Bowen* court determined that the charter was silent on whether the Lafayette City Council, independent from the City of Lafayette and mayor, could sue and be sued. *Bowen*, 94-584, p. 8, 649 So.2d at 615. The court elaborated:

> The City Council is the legislative branch and governing authority of the City of Lafayette. As such, it is vested with all powers of the city except those which are otherwise provided by law or by the Charter. However, it is not "an additional and separate government unit" with the power to institute litigation on its own behalf. The City Council is a branch or part of the greater corporate body politic or juridical entity, the City of Lafayette. The Charter (organic law), which clearly grants the City Council broad powers, restricts the City Council's legal capacity to exercise such powers by establishing it as the legislative branch of city government. In this capacity, the City

5

Council may only exercise its powers as an agency or division of the greater city government.

*Id.* at p. 9, 649 So.2d at 616. The court noted that the city council was "not *sui juris* or juridically independent of the City of Lafayette." *Id.* at p. 10, 649 So.2d at 616. The city council members did not join the suit in their individual capacities as persons. Further, the court provided that while "'[c]ustom results from practice repeated for a long time and generally accepted as having acquired the force of law,'" the documentary and testimonial evidence was insufficient to establish a custom of treating the city council as a separate juridical entity. *Id.* at p. 11, 649 So.2d at 616-17 (quoting La. C.C. art. 3).

The Third Circuit, addressed a similar issue in *Roy v. Alexandria City Council*, in considering whether the Alexandria City Council was an entity that has the procedural capacity to sue and/or be sued. 2007-1322, p. 2 (La. App. 3 Cir. 5/7/08), 984 So.2d 191, 194. The court examined Alexandria's Home Rule Charter, and found that it was silent on the capacity of the council to sue or be sued:

> The home rule charter further provides that the Mayor is responsible for the supervision and direction of all divisions. This includes the legal division, of which the city attorney, appointed by the Mayor and approved by the council, is the head. In fact, the home rule charter specifically provides that "[t]he city attorney shall serve as chief legal adviser to the Mayor, City Council...." The home rule charter also states that "[n]o special legal counsel shall be employed by the city except by written contract and approval of the City Council."

The court held that while the city council could not be sued, however, the five individual members could be sued as they are natural persons. *Roy*, 2007-1322, pp. 3-4, 984 So.2d at 194-95.

In the present matter, the Home Rule Charter of the City of New Orleans provides, in relevant part:

ARTICLE I. – INCORPORATION AND FORM OF GOVERNMENT

\* \* \*

## Section 1 – 102. – Form of Government.

The government provided by this Charter shall be known as the Mayor-Council form of government. The Mayor shall be aided by a Chief Administrative Officer who, in the performance of the duties of office, shall be responsible to the Mayor.

\* \* \*

ARTICLE III. – THE COUNCIL

\* \* \*

## Section 3 – 101. – Legislative Powers.

(1) All legislative powers of the City shall be vested in the Council and exercised by it in the manner and subject to the limitations hereinafter set forth.

\* \* \*

ARTICLE IV. – EXECUTIVE BRANCH

\* \* \*

## CHAPTER 1. – ORGANIZATION AND GENERAL PROVISIONS.

## Section 4 – 101. – Executive Powers.

All executive and administrative powers of the City shall be vested in the Executive Branch.

## Section 4 – 102. – Organization

The Executive Branch shall consist of the Office of Mayor, of which the Mayor shall be the head. . .

## CHAPTER 4. – DEPARTMENT OF LAW.

\* \* \*

## Section 4-403. – Special Counsel.

(1) No special counsel shall be retained to represent the City or any officer, department, or board except the Sewerage and Water Board, the Department of City Civil Service, the Public

Belt Railroad Commission, and the Board of Liquidation, City Debt, and except as may herein be otherwise provided.

(2) The Council may, by two-thirds vote of its entire membership, employ special counsel for itself.

(3) The Council may, by two-thirds vote of its entire membership, authorize any officer, department or board to employ special counsel for any special matter presenting a real necessity for such employment, provided any such authorization shall specify the compensation, if any, to be paid for said services.

Here, the Board argues that the Home Rule Charter does not specifically provide that the City Council has the authority institute suit. Additionally, the Wisner Family Interests have a similar argument — the Home Rule Charter solely establishes the City Council as the legislative arm of the City of New Orleans. On the other hand, the City Council contends that the "Special Counsel" provision of the charter does not limit the duties of counsel once hired, which affords it the ability to hire counsel for the purpose of instituting a suit. While the parties have different interpretations of the Home Rule Charter, reading it as a whole reveals that the City Council is not a separate and independent agency from the City of New Orleans, it does not function independently, and its legal capacity is subject to limitations.

Similar to *Bowen* and *Roy*, the mayor is the head of the executive branch and the City Council is vested with all legislative powers of the City of New Orleans. Although the provision in the Home Rule Charter explicitly grants the City Council the authority to employ special counsel for itself subject to two-thirds vote of its entire membership, the provision does not grant the City Council the authority to institute a suit on its own behalf. Therefore, we find that the trial court erred in denying the exception of lack of procedural capacity.

8

In light of our finding that the City Council lacks procedural capacity, we pretermit discussion of the remaining assignments of error. We now turn to the City Council's motion to dismiss.

**Motion to Dismiss**

The City Council filed a motion to dismiss or alternatively to stay the appeal of the Wisner Family Interest. The City Council argues that although the interveners may be impacted by the injunction, they were not a party to the preliminary injunction nor were they named in the trial court's October 13, 2022 judgment. Given our finding that the City Council lacks procedural capacity, we deny the City Council's motion to dismiss or alternatively stay the appeal as moot.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's October 13, 2022 judgment denying the dilatory exception of lack of procedural capacity and dismiss the City Council's petition with prejudice. The City Council's motion to dismiss appeal or alternatively stay the appeal is denied.

**REVERSED; CASE DISMISSED WITH PREJUDICE; MOTION TO DISMISS APPEAL OR ALTERNATIVELY STAY THE APPEAL DENIED**