413 So.2d 185 (1982)
Ernest N. MORIAL
v.
COUNCIL OF the CITY OF NEW ORLEANS, and Sidney J. Barthelemy, Joseph I. Giarrusso, Frank Friedler, Jr., James M. Singleton, Mike Early, Brod Bagert, Philip C. Ciaccio, Individually and in Their Official Capacities as Members of The Council of the City of New Orleans.
No. 12164.
Court of Appeal of Louisiana, Fourth Circuit.
March 22, 1982.
Rehearing Denied May 19, 1982.
*186 Camp, Carmouche, Palmer, Barsh & Hunter (APLC), New Orleans, Donald A. Hoffman, New Orleans, for plaintiff-appellant.
Arthur A. Lemann, III, and Ronald P. Nabonne, New Orleans, for defendant-appellee.
Sidney M. Bach, Gerald Wasserman, Clyde P. Martin, Jr., New Orleans, for intervenor-appellee.
Before GULOTTA, GARRISON and BARRY, JJ.
BARRY, Judge.
This appeal concerns the constitutionality of an ordinance enacted by the New Orleans City Council which requires the City to withhold from the salary of any requesting City employee "dues or other expenses to any organization to which he belongs or to which he incurs expense [sic] which are related to his employment with the city...".
Mayor Morial vetoed the ordinance and by a five to two vote the Council overrode the veto and the ordinance became law. The Mayor then filed this suit against the Council for a declaratory judgment that the law is unconstitutional because it violates the doctrine of separation of powers mandated by the Louisiana Constitution and the New Orleans Home Rule Charter. The Police Association of Louisiana Local 253 and the Public Employees Association filed interventions in support of the ordinance. The parties entered a joint stipulation of facts and cross-motions for summary judgment were filed. In written reasons the Trial Judge noted that under the City Charter employee compensation is a legislative responsibility and held that the formulation of a policy permitting deductions is no less legislative and the Council's ordinance was therefore constitutional.
Plaintiff asserts that LSA-R.S. 42:457[1] provides the "employing authority" with discretion over payroll deductions and the New Orleans Home Rule Charter should be interpreted as designating the Mayor or his representative as the "employing authority" for City employees. Plaintiff argues that if the legislature had intended the City Council to have this power, the statute would have used the term "governing authority"[2] rather than "employing authority". Further, since the right to employ City workers (except the Council and its staff) is vested in the executive branch, the ordinance is in contravention of LSA-R.S. 42:457 and unconstitutional. Plaintiff also points out that the Council does not set compensation, but rather adopts or rejects recommendations of pay plans and the Council's responsibility is appropriating funds rather than setting salaries. Hence, the Trial Court's reasoning is based upon a faulty premise.
Defendants submit that for years the City permitted unrestricted payroll deductions, but in March, 1979 the Director of Finance advised that certain payroll deductions[3] *187 would be discontinued because of a reduced budget. That prompted the Council to pass this ordinance which requires the City to make requested deductions unless the organization bears "... no substantial relationship to the employee's wages, hours, grievances, working conditions, duties, or rights as a city employee." The ordinance permits the City to collect $5.00 a month per twenty-five or fewer individual charges for each specified organization.
In answer to plaintiff's contention that the Mayor is the "employing authority", defendants reason that if the legislature intended "employing authority" and the Mayor to be synonymous it would have used the term "appointing authority". Defendants assert the term "employing authority" refers generally to the City as an entity and the question is whether the executive or legislative branch, or both, have the discretion to refuse/permit payroll deduction privileges. Defendants conclude that upon passage of this ordinance City employees have a statutory right to take advantage of this privilege by paying a nominal charge to the City and any contrary regulation by the Mayor (plaintiff) would be subordinate to the ordinance.
Prior to the 1974 Constitution it was well-settled that municipal corporations were creatures of the state and possessed only specific delegated powers. Some municipal corporations derived all their powers and were shaped by the legislative process, while others were restricted to legislation permitted by the Constitution. Bradford v. City of Shreveport, 305 So.2d 487 (La.1974). The City of New Orleans was of the latter type in that its Home Rule Charter was founded on a constitutional grant, specifically art. XIV, § 22 of the 1921 Constitution, as amended by Act 551 of 1950, and became effective May 1, 1954.
The 1974 Constitution reversed this philosophy: rather than limiting the powers of local governments to those expressly delegated by the Constitution or legislative, "... [i]f authorized by their home rule charter ..., the local governments are authorized to exercise any power necessary, requisite or proper for local government providing that such powers are not (a) inconsistent with the 1974 constitution or (b) denied them by general legislation. Art. 6, Sections 4 (pertaining to the New Orleans Charter), 5(E), 7(A)." City of Shreveport v. Kaufman, 353 So.2d 995 (La.1977) at p. 997. (Emphasis in Original) However, City of Shreveport v. Curry, 357 So.2d 1078 (La. 1978) did not allude to the 1974 constitutional changes and relied on the earlier rule. 357 So.2d at 1080.
Our initial concern is whether this matter is subject to "local" treatment. If the ordinance conflicts with or is inconsistent with the Constitution or if the ordinance "infringe(s) the spirit of state law or (is) repugnant to the general policy of the state", then the ordinance is unconstitutional. National Food Stores of Louisiana, Inc. v. Cefalu, 280 So.2d 903 (La.1973) at p. 907 citing City of Minden v. David Brothers Drug Company, 195 La. 791, 197 So.2d 505 (1940). LSA-R.S. 42:457 does not specify nor indicate an attempt by the legislature to preempt the area of payroll deductions. The statute makes reference only to dues for labor organizations with the qualification that the employing authority may elect whether or not to make such deductions; therefore, we conclude that local regulation is permissible if it is not in conflict with the Home Rule Charter or otherwise unconstitutional.
The statute is silent on who is the "employing authority" with discretion to authorize deductions. We disagree with plaintiff that the formulation of a "dues checkoff" policy is reserved exclusively to the executive branch. To the contrary, it appears the legislature intended to leave *188 this decision to the governmental "unit" and not dictate which branch is to make the decision. We find no statutory prohibition against the Council enacting this ordinance.
Having found that preemption was not intended by the statute and that "employing authority" is not a mandate by the legislature to leave this decision to the Mayor but rather a directive to the local entity, then the last question is: who has the power to authorize payroll deductions under the City Charter which does not clearly define legislative or administrative functions.
The "Summary of the Preliminary Draft of the Proposed Home Rule Charter" gives a general description of the city government. "[I]t makes the Mayor solely responsible for the administration of the government. This centralizes executive authority in one elected official, and the people can hold him accountable for the performance of the departments of government." (P. 5). "... [T]he Mayor is made the administrative head of government and the Council is restricted to legislative and policy functions." (P. 6) "The Council ... would be a legislative body, and would be responsible for determining policy and expressing it by passing the laws of the City, by considering and passing the budget appropriation ordinance, and for investigating the administrative actions of the Mayor." (P. 7)
The Charter clearly intended a separation of powers. Sec. 3-101(1) provides:
"Legislative Powers. (1) All legislative powers of the City shall be vested in the Council and exercised by it in the manner and subject to the limitations hereinafter set forth." (Emphasis Supplied)
Sec. 4-101 provides:
"Executive Powers. All executive and administrative powers of the City shall be vested in and exercised by the Executive Branch."
Apparently the Council has specific limitations, whereas, in contrast Sec. 4-206[4] enumerates specific executive powers.
Defendants and intervenors urge Sec. 3-112(5) in support of their position because the ordinance establishes a "charge for services rendered" and grants a privilege:
(5) "Proposed ordinance on any of the following specified subjects can be adopted only at a regular meeting of the Council and shall not be adopted until at least twenty-one days after...:
(a) Levying any tax or excise ...
(b) Imposing any license, requiring any permit, establishing any charge for services rendered, ...
(c) Zoning or rezoning, ...
(d) Alienating any immovable property; granting any servitude, franchise, or privilege." (Emphasis Supplied)
We feel Sec. 3-118[5] of the Charter which authorizes the Council to adopt pay plans is sufficient to establish the Council's authority to enact this ordinance authorizing payroll deductions. We also note that Sec. 4-107[6] supports this conclusion by subordinating executive regulations to Council *189 ordinances "affecting the public and necessary to the performance of the functions assigned to such office or department".
Plaintiff cites City of Charlotte v. Local 660, International Association of Firefighters, 426 U.S. 283, 96 S.Ct. 2036, 48 L.Ed.2d 636 (1976) which involved an equal protection challenge to the city's refusal to withhold union dues. The city had determined it would withhold only for programs of general interest in which all city employees could "without more" participate which excluded withholding for unions because union membership was a prerequisite. The Supreme Court held this was not an arbitrary line so devoid of reason that it violated equal protection. In Charlotte, there was no contract, statute or ordinance involved and it is not applicable to this case.
We therefore hold that Ordinance Number 828 M.C.S. (Code of the City of New Orleans), Chapter 2, Sec. 2-11.1 is constitutional and the District Court judgment is affirmed with plaintiff/appellant to pay all costs of appeal.
AFFIRMED.
NOTES
[1] LSA-R.S. 42:457. Union dues

"Any state, parish, or city employee may authorize his employing department, board or agency to withhold from his salary a specific amount for such pay periods as may be designated, for payment of his dues to any labor organization to which he belongs and which he designates therein. In such cases, the employee must voluntarily execute and furnish to the employing department, board or agency a written and specific authorization for such deductions; provided, however, that the employing authority may elect whether or not to make such deductions. Any amount withheld in accordance with the provisions of this Section shall be remitted forthwith to the organization designated. In the event such deductions are made, the employer shall be authorized to deduct postage and such other expenses that may be incurred in connection with such collection and remittance."
[2] "Governing authority" is defined as the body which exercises the legislative functions of political subdivisions. LSA-Const. Art. 6, § 44.
[3] Ten organizations were notified that deductions would terminate: World Insurance Company, Black Organization of Police, Friedberg's Uniforms, Inc., American Federation of Police, Labiche's Inc., Fraternal Order of Police, Pan American Life Insurance, Public Employees Association of New Orleans, Police Association of Louisiana (Local 253PANO) and Police Mutual Benevolent Association.
[4] Section 4-206. Powers and Duties. (1) Executive and Administrative Powers. "The Mayor shall be the chief executive officer of the City. He shall have the power and shall be required to:

* * * * * *
(3) Other Powers. "The Mayor shall:
(a) Exercise such other powers and perform such other duties as may be prescribed by this Charter, by ordinance or by applicable State Law.
(b) Have a voice but no vote in the proceedings of all boards created by this Charter of which he is not made an ex officio member."
[5] Section 3-118. "Adoption of Pay Plans. All persons employed by the City or any of its boards, whether as officers or otherwise, and paid either in part or in whole from appropriations made by the Council, except those whose compensation is fixed in this Charter, shall be compensated only in accordance with pay plans adopted by the Council. The pay plan for those persons in the classified service shall be in accordance with the prevailing provisions of the civil service law and the rules and regulations adopted thereunder. The pay of all other persons shall be upon the basis of a pay plan recommended by the Mayor and adopted by ordinance."
[6] Section 4-107(3). "Powers and Duties of Officers and Department Heads.

* * * * * *
The Mayor, or each officer or department head with the consent of the Mayor, shall submit to the Council for its approval such reasonable regulations affecting the public and necessary to the performance of the functions assigned to such office or department. No such regulation shall become effective until approved by resolution of the Council and inscribed in the Book of Regulations. Any such regulation may be rescinded or amended either by the same process as when originally submitted or by the Council at any time. All regulations shall be subordinate to the ordinances of the Council." (Emphasis Supplied)