Dear Mr. Delahaye:
You requested a clarification on behalf of the Iberville Parish School Board ("Board") of a previous opinion rendered by this office concerning La. R.S. 17:1202. In Atty. Gen. Op. No. 06-0257, we have stated that the Board was not obligated to make extended sick leave payments to a teacher who failed to comply with the requirements set forth in La. R.S.17:1202.[1] In your letter seeking clarification of that opinion, you state that the Board voted to pay a teacher who has not complied with La. R.S. 17:1202, as it interpreted the "not obligated" language in Opinion No. 06-0257 to mean that it possessed the discretion to make such payment. In view of the Board's action and the conclusion in Opinion No. 06-0257 that the Board had no legal obligation to make the payment, you ask whether such payment would be an unconstitutional donation in violation of La. Const. art. VII, § 14.
Article VII, Section 14(a) of the Louisiana Constitution of 1974 provides as follows concerning the donation, loan or pledge of public credit:
 Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
Relying on City of Port Allen v. Louisiana Municipal Risk ManagementAgency, Inc., et al, 439 So.2d 399 (La. 1983), prior opinions of this office had applied Article VII, § 14 to situations in which the state or a political subdivision had no obligation to make a payment of public funds. Under the standards established by the Louisiana Supreme Court inCity of Port Allen, Article VII, § 14 is violated when the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so.
Based on City of Port Allen, this office has consistently concluded that the payment of a bonus or any other gratuitous, unearned payment to public employees is prohibited, as it would be tantamount to a donation. See La. Atty Gen. Op Nos. 79-1352, 80-806, 80-1095, 81-1044, 85-908, 86-88, 86-639, 88-344, 89-190 and 91-383, where we have found that retroactive pay increases for services previously rendered is a violation of Article VII, § 14. Any salary adjustment should have prospective application only. Also see McElveen v. Callahan,309 So.2d 379 (La.App. 3 Cir. 1975), writ denied, 313 So.2d 602 (La. 1975), where the court stated "[p]ayments to be legal must be in the form of salary increases for the future, not extra compensation for past services rendered."
However, this office has interpreted Article VII, § 14 as not prohibiting the payment of earned compensation retroactive to the time at which the state or a political subdivision obligated itself to make such a payment.[2] Attorney General Opinion Nos. 92-866, 95-440 and 00-67 indicate that if an obligation existed on the date on which the payment is made effective, there is no violation of Article VII, § 14.
In accordance with the above cited opinions and case law, the test for determining the constitutionality of a particular payment to a public officer or employee is whether the payment is made out of a motive of beneficence solely to enrich the officer or employee, or whether the payment is deserved and made as recompense for valuable service rendered, for which the officer or employee was not adequately paid. Atty. Gen. Op. No. 95-323. Another relevant factor considered in prior opinions is whether a legal obligation exists on the date on which the payment is made effective.
Recently, in Board of Directors of the Industrial Development Board ofthe City of Gonzales v. All Taxpayers, et al., 2005-2298 (La. 9/6/06),938 So.2d 11 (Cabela), the Louisiana Supreme Court established a different standard to determine compliance with La. Const. art. VII, § 14. At issue in the case was a municipality's issuance of bonds, pursuant to the Tax Increment Financing Act ("TIF"), to provide public funding for a project to develop a private retail sporting goods store and park called "Cabela's Retail Center." The Cabela court noted that tax increment financing was authorized by the Cooperative Economic Development Law and that TIF specifically authorized tax increment financing to be used for projects such as the one at issue in the case. The court further found that the financing scheme of the project was not gratuitous on the part of the parties, since the project documents imposed a variety of obligations upon the (private) retailer, such as developing property located adjacent to the retail center for purposes of attracting complementary businesses, purchasing materials and equipment from businesses located within the municipality, and employing residents of the municipality. In addition, the public benefit to the municipality was projected to exceed the public assistance extended to the private entity, which projection was supported by the contractual obligations imposed on the private retailer. Based on a finding that both parties expected to receive something of value in return for the performance of their obligations, the court concluded that the public assistance extended to the private retailer by the municipality was not a donation of public funds to a private entity prohibited by Louisiana Constitution. Cabela repudiated the interpretation of Article VII, § 14 in City of Port Allen standards and declared "instead that § 14(a) is violated when public funds or property are gratuitously alienated."Id., at 23.
The laws applicable to a determination of whether the Board had an obligation to pay the teacher in this case are as follows: Extended sick leave permits a teacher to take up to ninety (90) days of extended sick leave within each six-year period of employment. The teacher may take this leave at any time that the teacher has no remaining sick leave. La. R.S. 17:1202(A)(1). A teacher on extended sick leave must be paid sixty-five percent of the salary he/she is paid at the time the extended sick leave commences. La. R.S. 17:1202 (C)(2). On each occasion in which a teacher uses extended sick leave, a statement from a licensed physician certifying that the leave is medically necessary must be presented prior to the use of such leave. La. R.S. 17:1202 (E)(1)(a). However, the required physician statement may be presented and the extended sick leave may be requested subsequent to the teacher's return to work. Under those circumstances, the extended leave shall be granted if the required documentation (i.e., the physician statement) is presented within three days after the teacher returns to service. La. R.S. 17:1202 (E)(1)(b).
Regardless of whether we apply the pre-Cabela reasoning followed in our prior opinions or the current legal standard announced inCabela, it is our opinion that the Board's decision to pay the teacher who failed to meet the requirements set forth in La. R.S. 17:1202 would be an unconstitutional donation. Such payment fails to meet the former set of standards for the following reasons: the payment was not prospective, but concerned services that were to have been rendered in February and April of 2006; the Board had no legal obligation as of February and April of 2006 to make such payment; and finally, the payment is in direct violation of La. R.S. 17:1202 (E) in that the Board voted to grant a teacher extended sick leave who did not follow the statutory requirements.[3]
The Board's decision to make the payment also fails to meet theCabela standards: unlike Cabela, where state law specifically authorized the use of public funds for economic development projects involving private entities, state law in this case (i.e., La. R.S. 17:1202) specifically disallows extended sick leave payment unless the statutory requirements are met;[4] unlike Cabela, the payment here appears to be purely gratuitous in that there is no public benefit or public purpose that motivated the payment;[5] and again unlike Cabela, the payment did not impose mutual obligations on the parties (i.e., the teacher and the Board), but merely on the Board. The Board did not have a reasonable expectation, evidenced by contractual obligations, of receiving equal or higher value as compared to the public assistance offered to the private person, i.e., the extended sick leave payment to the teacher. In fact, the Board received no public benefit at all. Thus, the decision to pay the teacher would result in a gratuitous alienation of public funds, which would violate Article VII, § 14 of the Louisiana Constitution as interpreted in Cabela.
Thus, it is the opinion of this office that any extended sick leave payments to a teacher who did not meet the statutory requirements of La. R.S. 17:1202 (E) would be in violation of La. Const. art. VII, § 14.
We hope this sufficiently answers your inquiry. If we can be of further assistance, please do not hesitate to contact us.
 Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 By:________________________
 Uma M. Subramanian
 Assistant Attorney General
 CCF, Jr.:UMS
[1] The underlying facts are as follows: A teacher in Iberville Parish was denied extended sick leave for missing a half (½) day of work on February 3, 2006 and for missing five days of work from April 24-28, 2006. The teacher failed to follow the procedures required under La. R.S. 17:1202(E) in that she failed to submit a physician's statement for the February 3rd date and that she submitted the physician's statement a week beyond the due date for the five days missed in April. Based on the provisions of La. R.S. 17:1202 and the facts as described to us, we opined that the Board was not obligated to pay the teacher who failed to meet the requirements set forth in La. R.S. 17:1202 (E).
[2] In the context of salary increases, the payment of earned compensation retroactive to the time at which the state or a political subdivision obligated itself to make such a payment is distinguishable from "extra compensation for past services rendered" in that the compensation is not "extra." The compensation due or earned compensation of an employee is that which an employer is required to pay pursuant to its obligation(s) to the employee. It is a payment outside of any such obligation(s) that would constitute "extra compensation for past services rendered" if distributed as a salary increase with retroactive effect. The prospective application analysis should relate to the salary increase being prospective from the point at which the obligation was created.
[3] We note that La. R.S. 17:1202 contains no exception that would allow a school board to grant extended sick leave to a teacher who, through no fault of her own, is unable to produce a physician's certificate within the statutory timeline. Thus, the requirement and the timeline appear to be absolute, leaving little discretion to the Board to assess whether the teacher's failure to follow them is justifiable. In this regard, the Board's regulations allowing the Board to consider extenuating circumstances and waive the statutory requirements do not alter our analysis and conclusion. A local school board may not adopt regulations contrary to state law by waiving mandatory requirements established by state law. See Morial v. Council City of NewOrleans, 413 So. 2d 185 (La.App. 4 Cir. 1982); Orleans Parish SchoolBoard v. City of New Orleans, 468 So.2d 709 (La.App. 4 Cir.1985),writ den., 472 So.2d 593 (La. 1985); City of Lake Charles v.Broussard, 475 So.2d 411 (La.App. 3 Cir. 1985).
[4] Attached to your request is some correspondence sent on behalf of the teacher arguing that La. R.S. 17:1202(E)(2)(d)(ii) allows the Board to pay a teacher who fails to follow the statutory requirements. However, La. R.S. 17:1202(E)(2)(d)(ii) merely allows school boards to provide additional compensation or extended sick leave days in excess of what is statutorily required. Thus the Board may provide additional compensation in excess of the 65% that is statutorily required (e.g., raise the extended sick leave payment to 70% from the statutory minimum of 65%); it may also provide extended leave days in excess of the statutory minimum of 90 days in a 6-year period (e.g. establish 100 days in a 6-year period as the extended sick leave for teachers). The Board's decision to waive the statutory requirements of a physician's certificate within the statutory timeline does not fall into either of these two allowed measures. Additionally, either one of these additional measures taken by a school board would be in the nature of a generic rule applicable to all employees, and not particular to the circumstances of any one employee. The other arguments made in the correspondence do not warrant any analysis, nor do they alter the conclusion we reach in this opinion.
[5] Based on the facts provided, it appears that the only reason that the Board provided in support of its decision was that it believed it had the discretion to make the payment at issue. It does not appear that the Board discussed or found any public purpose to have been served by granting extended sick leave to the teacher.