# Supreme Court of Louisiana

The Opinions handed down on the **22nd day of March, 2024** are as follows:

**BY Crichton, J.:**

2023-C-01106 THE COUNCIL OF THE CITY OF NEW ORLEANS VS. EDWARD WISNER DONATION, THE HONORABLE MAYOR LATOYA CANTRELL, IN HER OFFICIAL CAPACITY AND AS TRUSTEE, MICHAEL PENEGUY, SENATOR EDWIN MURRAY, MAJOR CHRIS THORNHILL AND PATRICK NORTON C/W THE COUNCIL OF THE CITY OF NEW ORLEANS VS. EDWARD WISNER DONATION, THE HONORABLE MAYOR LATOYA CANTRELL, IN HER OFFICIAL CAPACITY AND AS TRUSTEE, MICHAEL PENEGUY, SENATOR EDWIN MURRAY, MAJOR CHRIS THORNHILL AND PATRICK NORTON (Parish of Orleans Civil)

REVERSED AND REMANDED. SEE OPINION.

Weimer, C.J., dissents and assigns reasons.

Genovese, J., dissents for the reasons assigned by the court of appeal and Chief Justice Weimer.

# SUPREME COURT OF LOUISIANA

## No. 2023-C-01106

## THE COUNCIL OF THE CITY OF NEW ORLEANS

## VS.

## EDWARD WISNER DONATION, THE HONORABLE MAYOR LATOYA CANTRELL, IN HER OFFICIAL CAPACITY AND AS TRUSTEE, MICHAEL PENEGUY, SENATOR EDWIN MURRAY, MAJOR CHRIS THORNHILL AND PATRICK NORTON

## C/W

## THE COUNCIL OF THE CITY OF NEW ORLEANS

## VS.

## EDWARD WISNER DONATION, THE HONORABLE MAYOR LATOYA CANTRELL, IN HER OFFICIAL CAPACITY AND AS TRUSTEE, MICHAEL PENEGUY, SENATOR EDWIN MURRAY, MAJOR CHRIS THORNHILL AND PATRICK NORTON

### On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Orleans Civil

**CRICHTON, J.**

This dispute between the Council of the City of New Orleans ("Council") and certain defendants, including the Mayor of the City of New Orleans, relates to the assets of what is commonly referred to as the Edward Wisner Trust.[1] We granted the writ to determine whether the Council has the procedural capacity to institute this lawsuit. For the reasons that follow, we find the Council does have the procedural

---

[1] The defendants in this case appear before the Court in two groups. The first group consists of the Edward Wisner Trust Management Board, on behalf of the Edward Wisner Donation, Mayor LaToya Cantrell, as Trustee of the Wisner Trust and representative member of the Board, and Senator Edwin Murray, Major Chris Thornhill, Patrick Norton and Michael Peneguy (now deceased) in their respective representative capacities as members of the Board (collectively the "Wisner Board"). The Council has reserved its right to dispute the Board's status but appears to have accepted the Board as proper party for purposes of the exception at issue. The second group consists of the Wisner Family Interests, LLC, Mark E. Peneguy, Cook Family Properties, LLC, Wendell H. Cook, Jr., EWP Family Properties, LLC, and Edward W. Peneguy, Jr. (the "Wisner Interests").

capacity to bring this suit. We therefore reverse the decision of the court of appeal and remand to the court of appeal to consider the pretermitted issues related to the preliminary injunction.[2]

## BACKGROUND

This case arises out of the 1914 Act of Donation by philanthropist Edward Wisner, in which he donated approximately 50,000 acres of land to the City of New Orleans. Over the course of the past 100 years, the acreage has become valuable, with the value of the donated assets estimated to exceed $100 million. *See generally In re: Edward Wisner Donation ("Wisner I")*, 2014-0027, p.6 n.2 (La. App. 4 Cir. 9/18/14), 150 So. 3d 391, 395, *writ denied*, 2014-2135 (La. 2/13/15), 159 So. 3d 463. The Act of Donation also created a trust ("Trust") over the properties for certain charitable purposes for 100 years. Although the original Act of Donation did not name Wisner's widow and daughters as beneficiaries, litigation after his death resulted in a settlement agreement which granted them a 40% interest in the Trust revenues. In 2014, the Fourth Circuit held, *inter alia*, that the Trust created by the donation was not perpetual and expired 100 years after it was established. *Wisner I*, 2014-0027, p.12, 150 So. 3d at 399.

In early 2020, Mayor LaToya Cantrell and certain beneficiaries of the Trust entered into a Ratification, Extension, Modification and Amendment agreement ("2020 Agreement"), purporting to extend and alter the Trust. In July 2022, the City Council filed a petition for declaratory and injunctive relief, naming as defendants the Wisner Board and Mayor Cantrell in her official capacity.[3] Based upon the

---

[2] Because we hold the Council has the procedural capacity to bring this lawsuit, we do not reach the other issues the Council assigned as error, specifically (i) the court of appeal's exercise of appellate jurisdiction over the dilatory exception of lack of procedural capacity and (ii) its dismissal of the petition with prejudice.

[3] In addition to being sued a as member of the Trust Management Board, *see supra* n.1, Mayor Cantrell was also sued individually, in her official capacity as Mayor of the City of New Orleans and as the "signatory on behalf of the City to the 2020 Ratification Agreement." Because she did not oppose the Council's exception in those capacities, she does not appear before the Court other than as a member of the Trust Management Board.

2

allegations in the petition, the Council sought a declaration that the 2020 Agreement was an illegal disposition of public property to private persons and entities, an impermissible modification of the trust, and an absolute nullity. According to the Council, pursuant to *Wisner I*, the City became vested with full ownership of the Trust upon its expiration in 2014, and it was therefore exclusively entitled to all revenues and assets thereof. The Council also sought to enjoin the defendants from making further distributions of trust proceeds to the beneficiaries.

The Wisner Board filed an exception of lack of procedural capacity—at issue here—and, in the alternative, an exception of no right of action. The Council filed a motion for a temporary restraining order and preliminary injunction, asking the court to (i) enjoin the further distributions of proceeds and revenues "of the purported Trust to any purported beneficiary of the purported Trust other than the City of New Orleans," and (ii) enjoin the Mayor in her official capacity from transferring any Trust revenues received by the City to third parties without Council approval. The defendants known as the Wisner Interests, *supra* n.1, filed a petition to intervene and join the Wisner Board's exceptions.[4]

In late September 2022, the trial court held a hearing on the Council's motion for temporary restraining order and preliminary injunction and the Board's exceptions. The trial court denied the exceptions and granted the Council's requests for injunctive relief. With respect to the exception for lack of procedural capacity, the court stated, in part: "[T]o say the City Council doesn't have standing to bring this case flies in the face of everything that is elementary in civics and American government." The judgment was signed on October 13, 2022.

---

[4] Our review of the record indicates the trial court has not yet ruled on the petition for intervention, and we therefore do not rule here on the merits of that petition. Nevertheless, these entities have filed a brief and participated in the proceedings in the court of appeal and this Court.

In late October 2022, the Wisner Board and the Wisner Interests both filed motions for a devolutive appeal. Several weeks later, the Wisner Board and the Wisner Interests also filed separate expedited applications for supervisory writs with the court of appeal, which were denied. *Council of the City of New Orleans v. Edward Wisner Donation, et al.*, 2022-1666, 2022-1668 (La. App. 4 Cir. 12/20/22), 352 So. 3d 82, 352 So. 3d 87. This Court unanimously denied review. 2022-1666 (La. 12/20/22), 352 So. 3d 87; 2022-1668 (La. 12/20/22), 352 So. 3d 82.

In June 2023, the Court of Appeal, Fourth Circuit, ruling on the appeal, reversed the trial court. *Council of the City of New Orleans v. Edward Wisner Donation, et al. ("Wisner II")*, 2022-0790 c/w 2022-0791 (La. App. 4 Cir. 6/9/23), 371 So. 3d 74. The court of appeal found that the City Council is not a juridical person and dismissed the action with prejudice, pretermitting other issues raised in the appeals. The Council filed for rehearing, which the court of appeal granted, though the court ultimately denied the relief sought by the Council. *Wisner II*, 2022-0790 c/w 2022-0791, 371 So. 3d at 80-81. This Court thereafter granted the Council's writ application. 2023-1106 (La. 11/15/23), 373 So. 3d 53.

### ANALYSIS

The dilatory exception of lack of procedural capacity challenges the authority of the plaintiff to institute suit. La. Code Civ. P. art. 926A(6). "In an explicit statement of traditional civilian doctrine and ideas," the 1988 revision of Civil Code article 24 identifies two kinds of persons: natural persons and juridical persons. *Ermert v. Hartford Ins. Co.*, 559 So. 2d 467, 472 (La. 1990) (generally discussing article 24). "By its metric, capacity belongs to a juridical person." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 416 (5th Cir. 2023) (Dennis, J., analyzing a capacity question under Louisiana law). Article 24 explains, in pertinent part: "A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. . . ." The comments to the article instruct that capacity of a juridical

person "is governed by provisions in its charter, governing legislation, and customs." Civ. Code art. 24, cmt. d. Because the determination of whether the Council has the capacity to institute this lawsuit presents a question of law, we review it under the *de novo* standard.

In accordance with our civilian tradition, we begin by examining the primary sources of law. *Bergeron v. Richardson*, 2020-1409, p.9 (La. 6/30/21), 320 So. 3d 1109, 1116. "The primary sources of law are legislation and custom." La. Civ. Code art. 1. When these primary sources—legislation and custom—answer the legal question, "resort to jurisprudence is unnecessary." *Bergeron*, 2020-1409, p.9, 320 So. 3d at 116. In *Roberts v. Sewerage and Water Board of New Orleans*, 92-2048 (3/21/94), 634 So. 2d 341, the Court set forth the legal framework for determining whether a government unit has legal capacity:

> The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.
>
> Such a determination will depend on an analysis of specifically what the entity is legally empowered to do. Using such a functional approach, courts have found cities and various other kinds of local government entities to be independent and autonomous, having juridical personality.

*Id.*, 634 So. 2d at 346-47 (citing 1 Sands & Libonati, §§ 2.02, 2.18, 2.19, 2.20).

Pursuant to these principles, this Court must analyze the Council's status as "an additional and separate governmental unit for the particular purpose at issue," by using the primary sources of law—here, the Home Rule Charter of the City of New Orleans ("HRC") and custom. The "particular purpose" at issue in this case is

5

the Council's capacity to institute this suit related to the alleged improper and illegal disposition of the Wisner Trust property.

## The Home Rule Charter

HRC provisions are interpreted according to rules of statutory interpretation. *Montgomery v. St. Tammany Parish Gov't, by and through St. Tammany Parish Council*, 201-1811, p.6 (La. 6/27/18), 319 So. 3d 209, 216. Those rules require a court to give words "their generally prevailing meaning," and, when such meanings render a law "clear and unambiguous," "the law should be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code arts. 9, 11.

To begin, we look to the broader structure of the New Orleans government as set forth in the HRC. The City of New Orleans is governed by a Mayor-Council form of government, pursuant to which the Council is vested with legislative authority, and the Office of the Mayor, of which the Mayor is the head, is vested with executive authority. HRC §§ 1-102, 3-101, 4-101-102. Among its other powers, the Council has the authority to levy taxes, regulate utilities, and review and oversee certain contracts. HRC §§ 3-101, 3-113. As a co-equal branch of government, the Council is also vested with certain powers concerning its interactions with the executive branch, including the broad authorization to conduct investigations of "any office, department or board administering the affairs of the City," approve certain mayoral appointments, and override a mayoral veto of a Council ordinance. HRC §§ 3-124, 4-206, 3-113(3). A comprehensive review of the HRC and the City of New Orleans's governmental structure makes clear that the Council is an independent entity distinct from the executive branch. Pursuant to *Roberts*, that independence is indicative of capacity. *Roberts*, 634 So. 2d at 347 ("[A] local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to *function independently* and not just as the

6

agency or division of another governmental entity.") (emphasis added). Yet that is not the end of the inquiry. *Roberts* also instructs that a capacity determination must be made in "each particular case" of "whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue." *Roberts*, 634 So. 2d at 346-47.

Three provisions of the HRC, all contained in Chapter Four's discussion of the Department of Law, together grant the Council the procedural capacity to institute this lawsuit, in which it asserts that the 2020 Agreement "has divested the City of New Orleans of millions of dollars in revenues and assets, and has done so in perpetuity in violation of Louisiana law and without oversight and input from the City Council." First, the Department of Law shall "[h]ave charge of all legal matters in which the City has an interest or to which the City is a party, with power and authority, when directed by the Mayor *or the Council*, to *institute and prosecute or to intervene* in any and all suits or other proceedings, civil or criminal, as may be deemed necessary for the assertion or protection of the rights and interests of the City." HRC § 4-401(3) (emphasis added). Second, section 4-403(2) expressly states: "The Council may, by two-thirds vote of its entire membership, employ special counsel *for itself*." *Id.* (emphasis added). Third, section 4-403(3) permits the Council to authorize any officer to employ special counsel "*for any special matter* presenting a real necessity for such employment. . . ." *Id.* (emphasis added).

Though HRC § 4-401(3) expressly grants the Council the right to institute suit through the Law Department, the HRC is silent as to what happens where, as here, the Law Department is in conflict with the Council.[5] When read with sections 4-403(2) and 4-403(3), the provisions grant the Council the capacity to bring this lawsuit. *See* La. Civ. Code art. 13 ("Laws on the same subject matter must be

---

[5] No party disputes that the Law Department (which falls under the Executive Branch in the HRC) has a conflict with the Council (the Legislative Branch) in this case.

interpreted in reference to each other."). Together, these provisions provide that the Council can employ special counsel "for itself" and for "any" matter, including to "institute" suit. And, if the Council could not hire outside attorneys when its positions conflict with those of the Mayor and the Law Department, then HRC § 4-401(3)—which expressly provides authority to "the Council to institute . . . any and all suits" to protect the "rights and interests of the City"—would be rendered meaningless. *Louisiana Mun. Ass'n v. State*, 2004-0227, p.36 (La. 1/19/05), 893 So. 2d 809, 837 ("[C]ourts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided.") (citations omitted).

Examining the capacity question for the "particular purpose at issue," as instructed by *Roberts*, strengthens our holding. The Council seeks a declaration that the Mayor's unilateral actions "divest the City of New Orleans of millions of dollars in revenues and assets," by acting in what the Council alleges is an unconstitutional and illegal manner. In other words, the essence of the Council's petition is that the Mayor has acted unlawfully in transferring assets that rightfully belong to the City to private parties, without consultation with the Council. In its brief, the Wisner Board argues that the HRC provisions do not allow the Council to "run around filing suits in its name on its own behalf." Similarly, the dissent expresses concern that courts would be overburdened if every political disagreement resulted in litigation. This hyperbole disregards the nuance of the Council's argument, which posits that it has a right to sue where, as here, the Law Department (and presumably the Mayor herself) is in direct conflict with the Council related to the alleged illegal actions, and the Council argues its suit is "necessary for the assertion or protection of the rights and interests of the City." HRC § 4-401(3). We therefore agree with the Council that the HRC provisions—which by their express terms permit it to

8

"institute" suit and to employ special counsel for "any" matter and "for itself"—convey the power to file this specific suit on its own behalf.[6]

The court of appeal analyzed cases involving disputes in other parishes and found them "similar" to this case. *City Council of Lafayette v. Bowen*, 94-584 (La. App. 3d Cir. 11/2/94), 649 So. 2d 611, *writ denied*, 650 So. 2d 244 (La. 1995); *Roy v. Alexandria City Council*, 2007-1322 (La. App. 3 Cir. 5/7/08), 984 So. 2d 191, *writ denied*, 2008-1577 (La. 10/10/08), 993 So. 2d 1274. This argument is unavailing, as the charters in those cases are distinguishable from the HRC in several ways, but for our purposes, in one essential way: the charters the appellate courts reviewed in these cases do not have any provision empowering the hiring of counsel "***for itself***" and for "***any matter***," as the HRC does here. HRC § 4-403(2). *See generally Council of City of New Orleans v. Sewerage and Water Board of New Orleans*, 05-0384 (La. App. 4 Cir. 7/12/06), 936 So. 2d 862, *mooted on other grounds* 06-1989 (La. 4/11/07), 953 So. 2d 798 (explaining difference in New Orleans and Lafayette Home Rule Charters). Moreover, because the governing document for each entity is the primary source of law, and because each case must be examined on its own merits in light of the "primary purpose at issue," *Roberts*, 634 So. 2d at 346-47, we do not find those cases to be persuasive in light of the authority granted to the Council in ***this*** HRC and the allegations at issue in ***this*** case.[7]

---

[6] It is the dissent's position that the HRC does not grant the Council the procedural capacity to institute this suit because, as it states, the HRC does not "express[ly] grant" the Council the authority to institute suit "in its own name." The dissent also opines that the Council could employ special counsel for purposes other than filing suit. This position contorts general principles of statutory interpretation, which require that terms be given a meaning "consistent with the presumed fair purpose" of the law, and one that does not lead to absurd results. *La. Mun. Ass'n*, 2004-0227, p.36, 893 So. 2d at 837. As explained above, the HRC gives the Council ***both*** the ability to "employ special counsel for itself" (HRC § 4-403(2)), ***and*** the ability to "institute and prosecute" suits "necessary for the assertion or protection of the rights and interests of the City" (HRC § 4-401(3)). Interpreting these provisions against the Council in this case would lead to absurd consequences and would be inconsistent with the fair meaning of the HRC. Moreover, there is no alternative provision in the HRC that provides the Council is ***not*** a juridical person, making this argument even more unpersuasive.

[7] In addition to the substantive problems with this approach, the court of appeal erred in its analysis of and reliance upon jurisprudence before analyzing the terms of the HRC in light of the "particular

9

## Custom

Decades of litigation brought by and against the Council provide further support for establishing that the Council has capacity to institute this suit. La. Civ. Code art. 1 ("The primary sources of law are legislation and custom."). "Custom results from practice repeated for a long time and generally accepted as having acquired the force of law. Custom may not abrogate legislation." La. Civ. Code art. 3. As just explained, we find the "legislation" here—the HRC—provides the Council with the procedural capacity to initiate this suit; custom provides further support for our holding.

For nearly fifty years, the Council has appeared as a party to litigation both as plaintiff and defendant, at times in suits adverse to the Mayor. *See Council of City of New Orleans v. Sewerage and Water Board of New Orleans*, 05-0384 (La. App. 4 Cir. 7/12/06), 936 So. 2d 862, *mooted on other grounds* 06-1989 (La. 4/11/07), 953 So. 2d 798 ("[S]ince (1) the Council did vote by two-thirds of its entire membership to employ special counsel for itself, (2) Art. IV, § 403(2) grants that authority expressly, and (3) we cannot find that the Council's capacity to sue . . . leads to an absurd consequence, it was improper for the trial court to grant the S&WB's exception of no cause of action based upon lack of juridical capacity."). *See also City of New Orleans v. New Orleans Public Service Inc.*, 471 So. 2d 233 (La. App. 4th Cir. 1985) (Council intervened in action filed against City to enjoin issuance of bonds without Council approval or ordinance); *Morial v. Council of the City of New Orleans*, 413 So. 2d 185 (La. App. 4th Cir. 3/22/82) (Mayor sued Council for a declaratory judgment that an ordinance enacted by the Council was unconstitutional); *Council of City of New Orleans v. Morial*, 390 So. 2d 1361 (La. App. 4th Cir. 10/9/80) (Council and its individual members sued Mayor for

purpose at issue." Instead, in accordance with civilian principles, the court of appeal should first have looked at positive law (the provisions of the HRC) and custom. La. Civ. Code art. 1.

declaratory judgment declaring a contract for administrative services was not in accordance with public bid laws). Notably, in a pending lawsuit in Orleans Civil District Court, the Mayor's Chief of Staff, in his official capacity, named the Council as a defendant to block enforcement of a subpoena the Council issued to him. *See Davis, in His Capacity as Chief of Staff for the Office of Mayor LaToya Cantrell v. The City Council of New Orleans*, Civ. Dist. Ct., Orleans Parish No. 2022-04895.[8]

In the instant matter, the court of appeal first considered the Council's custom argument on rehearing and rejected it, quoting Civil Code article 3 and stating that "custom may not abrogate legislation." *Wisner II*, 2022-0790 c/w 2022-0791, 371 So. 3d at 81. But custom does not abrogate legislation in this case. Instead, as explained above, the custom at issue—the Council filing this lawsuit against the Mayor and others—***supports*** the language of the HRC, further reinforcing our holding that the Council has the procedural capacity to bring this suit.

## CONCLUSION

The Home Rule Charter of the City of New Orleans, read as a whole in light of its purpose and structure, and by its specific provisions related to the "particular purpose at issue" in this case, makes clear that the Council of the City of New Orleans has the procedural capacity to institute this lawsuit against the named defendants. The court of appeal therefore erred in finding the Council lacks procedural capacity. Because the court of appeal pretermitted certain issues related to the merits of the trial court's judgment, *see Wisner II*, 2022-0790, p.3 n.4, 371 So. 3d at 77 n.4, the matter is remanded to the court of appeal for further proceedings.

**REVERSED AND REMANDED.**

---

[8] In that unrelated case, the Mayor's Chief of Staff recognized the custom of the Council having capacity to sue and be sued stating, in part: "[A] suit against the City Council of New Orleans is not a suit against the City; instead, the City Council is a separate juridical person which can be sued in its own name—under the New Orleans City Charter."

SUPREME COURT OF LOUISIANA

No. 2023-C-1106

THE COUNCIL OF THE CITY OF NEW ORLEANS

VS.

EDWARD WISNER DONATION, THE HONORABLE MAYOR LATOYA
CANTRELL, IN HER OFFICIAL CAPACITY AND AS TRUSTEE,
MICHAEL PENEGUY, SENATOR EDWIN MURRAY, MAJOR CHRIS
THORNHILL AND PATRICK NORTON

C/W

THE COUNCIL OF THE CITY OF NEW ORLEANS

VS.

EDWARD WISNER DONATION, THE HONORABLE MAYOR LATOYA
CANTRELL, IN HER OFFICIAL CAPACITY AND AS TRUSTEE,
MICHAEL PENEGUY, SENATOR EDWIN MURRAY, MAJOR CHRIS
THORNHILL AND PATRICK NORTON

*On Writ of Certiorari to the Court of Appeal, Fourth Circuit,
Parish of Orleans Civil*

**WEIMER, C. J.**, dissenting.

I respectfully dissent. The majority opinion concludes that the New Orleans Home Rule Charter (HRC) "makes clear" that the Council has the procedural capacity to institute this lawsuit. Finding there is no clear and express grant of authority in the HRC for the Council to institute litigation, I would affirm the ruling of the court of appeal.

In **Roberts v. Sewerage & Water Bd. of New Orleans**, this court set forth a framework for determining the juridical status of an entity, explaining that the focus is not on the label given to the entity, but on what the entity is specifically empowered to do. **Roberts v. Sewerage & Water Bd. of New Orleans**, 634 So.2d 341, 346 (La.

1994) (citing 1 Sands & Libonati, **Local Government Law** § 2.02 (1993)).[1] This court stated: "In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity." **Roberts**, 634 So.2d at 347. Importantly, this determination is made relative to the particular purpose at issue. *Id.* at 346-47. Home rule charters are the supreme law of home rule charter jurisdictions, subordinate only to the constitution and constitutionally allowed legislation. **Montgomery v. St. Tammany Par. Gov't by & through St. Tammany Par. Council**, 17-1811, p. 7 (La. 6/27/18), 319 So.3d 209, 217. Thus, in this case, what must be determined is whether the Council is specifically and expressly empowered by the HRC to file suit on its own behalf. Contrary to the majority opinion, I find such specific grant of power is absent from the HRC.

The City of New Orleans is governed by a Mayor-Council form of government, with the Council established as the legislative arm of the City. Pursuant to the HRC, "[a]ll executive and administrative powers of the City shall be vested in and exercised by the Executive Branch" and "[a]ll legislative powers of the City shall be vested in the Council and exercised by it in the manner and subject to the limitations hereinafter set forth." HRC §§ 4-101, 3-101. The HRC explicitly confers powers on the Council to take various actions.[2] Yet the HRC contains no specific language authorizing the Council to file suit on its own behalf. To justify its finding otherwise,

---

[1] The same framework is retained in the updated volume, 1 Martinez, **Local Government Law** § 2.02 (2002).

[2] For example, the Council is empowered with authority to levy taxes (HRC § 3-101), regulate utilities (HRC § 3-130(1)), conduct certain investigations with subpoena power (HRC § 3-124), approve certain Mayoral appointments (HRC § 4-206), approve the City's budget (HRC § 3-115), approve the disposition of immovable property (HRC § 6-306), and approve the creation and modification of trusts (HRC § 4-1903).

the majority opinion points to three HRC provisions–§§ 4-401(3), 4-403(2), and 4-403(3)–that when read together purport to create such an implied authority. However, the strained interpretation employed by the majority opinion falls short of the express grant of power required under a **Roberts** analysis. There can be no extension of the authority by inference, and silence on the grant of juridical authority equates to absence of authority to sue.

Notably all three provisions relied on by the majority are contained within Article IV, Chapter 4 of the HRC, which concerns the Department of Law–a department within the Executive Branch, not the legislative arm of the City represented by the Council. HRC § 401(3) provides that the Department of Law, headed by the City Attorney, shall:

> (3) Have charge of all legal matters in which the City has an interest or to which the City is a party, with power and authority, when directed by the Mayor or the Council, to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as may be deemed necessary for the assertion or protection of the rights and interests of the City.

This section specifically relates to the functions of the City's Law Department, which falls within the executive branch headed by the Mayor, not directly to the functions of the Council. Although this section permits the Council to provide direction on the filing of suits, it expressly grants the authority to "institute and prosecute or to intervene in" suits to the Department of Law. No similar express language is included anywhere in the HRC granting the Council the power to institute suit in its own name.[3]

---

[3] The HRC is silent regarding hiring of special legal counsel when there are conflicting interests between the City, the Council, and/or the Mayor. However, other jurisdictions have prudently contemplated conflicts between the Mayor and Council and expressly provide that "[w]henever there is a legal action in which there are conflicting interests between the City, the Council, the Mayor and/or a member of the Council, and the City Attorney is unable to provide legal representation, the party who initiates the legal action shall bear his/her own costs of litigation, including attorney's fees." See Art. 5, Sec. 2(A)(4)(d) of the Thibodaux Home Rule Charter; see also Art. 4, Sec. 4-02(E)

3

Likewise, HRC § 4-403(2) and 4-403(3) address powers of the executive branch, and expressly prohibit a public body or department of the City from hiring special counsel, unless one of the enumerated exceptions apply. Specifically, HRC § 4-403 provides:

> (1) No special counsel shall be retained to represent the City or any officer, department, or board except the Sewerage and Water Board, the Department of City Civil Service, the Public Belt Railroad Commission, and the Board of Liquidation, City Debt, and except as may herein be otherwise provided.

> (2) The Council may, by two-thirds vote of its entire membership, employ special counsel for itself.

> (3) The Council may, by two-thirds vote of its entire membership, authorize any officer, department or board to employ special counsel for any special matter presenting a real necessity for such employment, provided any such authorization shall specify the compensation, if any, to be paid for said services.

This section does not address the Council's juridical capacity to file suit, but addresses the limited circumstances under which the Council or other department may retain special counsel. Having the ability to employ counsel should not be conflated with having juridical capacity to file suit,[4] particularly when the more specific provision assigns the Department of Law the "charge of all legal matters ... with power and authority ... to institute and prosecute or intervene in any and all suits or other proceedings." HRC § 401(3), *supra*.

The majority opinion blends the provisions quoted above to read into the HRC a nonexistent provision granting the Council the right to sue in its own name on behalf of the City. But one should not craft such power into existence by piecing

---

of the Franklin Home Rule Charter.

[4] Employing special counsel may be necessary for a variety of reasons related to the Council's enumerated powers, such as conducting investigations, exercising subpoena power, regulating utilities, obtaining legal analysis of proposed legislation, etc. However, power to employ counsel does not equate to explicit power to institute a suit on its own behalf.

4

together other HRC provisions.  The analysis set forth in **Roberts** requires the grant of juridical capacity and the power to sue to be clear and express, thereby preventing inconsistent interpretations of vague charter provisions.  Because the current HRC lacks an express declaration of power, expanding the Council's power to include the right to institute suit can only be accomplished by an amendment process, which requires a vote by the electorate of Orleans Parish.  La. Const. art. VI, § 5(C); HRC Art. IX, § 9-201(1).

Further, by creating this authority for the Council, the majority opinion has the potential to be expanded to negatively impact governmental operations and overburden the courts.  Being granted this power, the Council could resort to filing suit against the Mayor every time they have a political dispute, essentially making courts the *de facto* decision makers.  If every disagreement results in the threat of litigation, City government could grind to a halt.  The public prefers the Executive and Legislative branches work together to resolve issues through comity rather than litigation.  I am not suggesting a lack of remedy in a case such as this one, where a Mayor is alleged to have exceeded his or her authority, but checks on the Mayor's power in that situation are more properly addressed by the checks and balances already built into the HRC.[5]

Finally, any alleged "custom" establishing the Council's capacity to institute a lawsuit cannot override the absence of express authority in the HRC.  While custom is a primary source of law,[6] our Civil Code makes clear that "[c]ustom may not

---

[5]  The court of appeal opined, "the manner in which members of the City Council can assert claims against the defendants is by filing a separate and independent claim in their individual capacities as citizens." **Council of City of New Orleans v. Edward Wisner Donation**, 22-0790 (La. App. 4 Cir. 6/9/23), 371 So.3d 74, 81, aff'd on reh'g.  I do not opine on this advice because this issue is not before the court.

[6]  "The sources of law are legislation and custom."  La. C.C. art. 1.

abrogate legislation." La. C.C. art. 3. The HRC is the governing "legislation" or authority in this case. **Montgomery**, 17-1811 at 7, 319 So.3d at 217. Thus, the provisions of the HRC must prevail, and those provisions did not empower the Council to file this lawsuit. The mere fact that the Council filed suits before, without its authority being legally challenged previously, does not establish custom as that concept is used in the Louisiana Civil Code.

For the above reasons, given the lack of any express language conferring on the Council the authority to sue in its own name, I respectfully dissent.[7]

---

[7] This case is about the fair purpose of the law. In response to Footnote 6 in the majority opinion, I point out the opinion expressed in the dissent does not lead to an absurd result any more than the majority opinion, which creates the potential for courts making decisions each time the Mayor and Council cannot agree and litigation ensues. Simply referring to a result in a dissenting opinion as "absurd" does not make it so, when no rational basis for the so-called absurdity is disclosed. The fact that judges on the court of appeal and another Justice agree with the opinion set forth in the dissent demonstrates that it has not reached the level of "absurdity," but is simply a difference of opinion on a close legal issue. Footnote 6 selectively quotes portions of the HRC provision, but does not address the context and placement within the HRC. Lastly, § 4-401(3) requires that any institution of legal proceedings must be "for the assertion or protection of the rights and interests of **the City**," not just the Council or the Mayor, given the fact the City is governed by a Mayor-Council form of government.

6